SIRRATT *v.* STATE

398 S. W. 2nd 63

Opinion delivered January 17, 1966

*Joe W. McCoy,* for appellant.

*Bruce Bennett,* Attorney General; *Beryl F. Anthony, Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, James Sirratt, was charged with the crime of murder in the second degree, the Information alleging that Sirratt feloniously, and with malice aforethought, killed and murdered his wife, Geraldine Sirratt. The trial commenced

in Hot Spring County on January 18, 1965, and ended on the 20th day of January, 1965. Sometime in the afternoon, on January 19, an altercation took place in the corridor outside the courtroom. The court ordered the courtroom cleared of all spectators, appellant objecting on the basis that he was being deprived of a public trial. The next morning, when the trial resumed, the court again cleared the courtroom. Later in the day, the jury retired and reached its verdict, finding Sirratt guilty of voluntary manslaughter, and fixing his punishment at five years imprisonment in the State Penitentiary. From the judgment so entered, appellant brings this appeal. While appellant lists five points for reversal, all relate to the same issue, which is, ''Was Sirratt denied a public trial in violation of the Sixth Amendment to the United States Constitution, and Article 2, Section 10, of the Arkansas Constitution?''[1] That, then, is the sole issue before us.

Pertinent facts relating to this issue are as follows:

On January 19, while appellant was being cross-examined, the court suddenly called a recess, and retired to chambers where the following proceedings took place:

''The Court: It has come to the attention of the Court there has been a disturbance outside the courtroom. The Court has no way of knowing who was involved, or who started it. In the interest of decorum and in the interest of the courtroom, I believe it will be wise to clear the courtroom. The attorneys may designate the people they feel it is necessary for them to have in the courtroom. The defendant's attorney may designate the ones necessary for his defense.

Mr. McCoy: I object to the courtroom being cleared. I think we are entitled to open court.

The Court: It has been open so long as the trial could

---

[1]Amendment 6 to the Federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,* * *." Article 2, Section 10, of the Arkansas Constitution, provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial* * *."

be kept under circumstances that did not interrupt the decorum. Because there was a fight immediately outside the courtroom, with a number of persons involved, I have no way to separate all of those who must go and who must stay. The simplest way is to clear the courtroom.

Mr. McCoy: You have about four deputy sheriffs who could be put in the halls to preserve peace, and it hasn't been tried. Thereupon, proceedings in chambers concluded.

In open court, the Court directed the sheriff to clear the courtroom of spectators, which was immediately done.

Mr. McCoy: Save my exceptions."

Following this action, a rather lengthy cross-examination of appellant was conducted by the Prosecuting Attorney, after which there was a re-direct examination, following which another witness testified. The court then recessed until 9:00 o'clock the next morning. At that time, in open court, the court stated:

"In light of the difficulty we had yesterday, I am going to have to ask that the courtroom be cleared and ask you not to congregate in the courthouse or on the courthouse grounds. I want to tell you jurors, this is unusual. The events yesterday were unusual. We don't want any trouble, and this is the best way to avoid it."

Another witness then testified, after which instructions were given, and the case submitted to the jury.

We are aware of only two Arkansas cases on this subject. The first is *Hogan* v. *State,* 191 Ark. 437, 86 S. W. 2d 931. There, appellant was tried and convicted of raping a ten-year-old girl, and was sentenced to death by electrocution. Among other assignments of error, the appellant urged that the trial court erred in excluding the public from the courtroom, thus depriving him of his constitutional right to a public trial. This court said:

"* * * Appellant objected to the exclusion of the public from the courtroom on the ground that he was entitled to a public trial under the above constitutional provisions, and that the order of the court clearing the courtroom was an invasion of his constitutional right to a public trial. This objection was overruled, and an exception was taken. The prosecuting witness was then recalled and further examined, and gave very damaging testimony against appellant. We cannot agree that he was deprived of a public trial within the meaning of said constitutional provisions. It was apparent to the court and to every one else in the courtroom, and is apparent to us from a reading of her testimony given on the previous day, that she was terribly frightened and embarrassed to have to go upon the witness stand in the presence of a courtroom crowded with people and give testimony that must have been embarrassing and humiliating to her to a high degree. Under this situation she failed to give testimony which the court felt she could give if the embarrassment of the large audience in the courtroom were removed. * * *"

The court then quoted 16 C. J., Page 807, Paragraph 2052, which, in part, states:

"* * * It has also been held under some constitutional or statutory provisions, that in cases where the evidence is of a peculiarly indecent and vulgar character, the court may, in the interest of public morality and decency, exclude from the courtroom all persons except the jurors, witnesses, and others connected with the case, although there are decisions to the contrary."

The court then quoted from *State* v. *Damm* (South Dakota), 252 N. W. 7:

"*The order was effective only during the testimony of the prosecutrix.*[2] In view of the nature of the case and the age of prosecutrix, her embarrassment and disturbance are readily understandable. Under all of the cir-

[2]Emphasis supplied.

cumstances here appearing, we do not think the court abused its discretion or committed prejudicial error by its ruling, or deprived appellant of a public trial within the meaning of the constitutional provisions."

The other Arkansas case is *Payne* v. *State*, 226 Ark. 910, 295 S. W. 2d 312. There, appellant complained that he was not allowed a public trial because several Negroes were not allowed to enter the courtroom. Appellant's attorney objected, and the trial judge stated that he saw no vacant seats, and overruled the objection. We held that no error was committed.

But the situations that existed at these trials were considerably different from the situation here presented. In *Hogan,* a little girl, ten years of age, embarrassed at testifying to revolting and lewd facts before a crowded courtroom, was frightened to the extent that she was a most unsatisfactory witness. As a matter of calming down the child, the trial judge cleared the courtroom *for ten minutes.* As stated in 4 L. Ed. 2d 989, Page 2139:

"There is considerable support for the proposition that in prosecutions for sex offenses the circumstances presented may be such as to make exclusion of the public from the trial proper."

As to *Payne,* the general rule is found in 21 Am. Jur. 2d 301, Section 263:

"The requirement that trials be public is satisfied by admitting those who can conveniently be accommodated in the courtroom, where the law requires such trials to be held, without interrupting the calm and orderly course of justice. The right of a defendant is not infringed by the fact that the courtroom is not large enough to accommodate all who wish to attend."

It is apparent that in ordering a courtroom cleared for a short period of time to hear evidence of a vile nature, and in prohibiting people from entering a court-

room when there are no vacant seats, a court does not violate a defendant's right to a public trial, but, of course, these situations have no application to the facts of this case.

The purpose of a public trial is succinctly expressed in 21 Am. Jur. 2d 298, Section 258, where it is stated:

"The guaranty of public trial has always been recognized as a safeguard against any attempt to employ the courts as instruments of persecution. And the common-law right had already, at the time of the Sixth Amendment's adoption, come to be regarded as an essential guaranty for this purpose. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power, not only as to gross abuses, but also minor ones, such as indolence or petty arbitrariness. Other benefits of publicity have been cited, however; for example, it has been suggested that witnesses may testify more truthfully because of the greater risk that false testimony might be exposed. Public trials are more likely to come to the attention of persons who, though not known to the parties, may possess important information and may volunteer to testify. And the community gains confidence in its courts and in judicial remedies."

We are of the view that, from the record before us, appellant's constitutional rights were violated. Of course, the court has inherent power to take necessary steps to preserve order and decorum in the courtroom, and no one could logically argue otherwise. Here, however, the court's action in clearing the courtroom does not appear essential to the maintenance of decorum. The record does not reflect how the altercation was brought to the attention of the trial judge, but the record does disclose that the disturbance was *not* in the courtroom at all, but rather, in the corridor outside. There is no suggestion whatsoever from the record that any commotion was taking place in the courtroom itself, nor is there any indi-

cation that there were people present in the courtroom who might precipitate some disorder.[3] We know of no case, and none is called to our attention, where a courtroom was cleared because of a disturbance *beyond* the courtroom. Here, also, there was apparently no effort by the court to ascertain the identity of those responsible for the altercation in the corridor, and, in the absence of a showing that officers would have been unable to quell those responsible for the confusion, it would appear logical that the court, by sending deputy sheriffs to the hall, could have immediately restored order. In *People* v. *Murray* (Michigan), 50 N. W. 995, the trial court had directed the bailiff to admit "respectable citizens." In reversing, the Supreme Court of Michigan said:

"We cannot accept the conclusion of the judge, 'that the trial was at all times during the same a public trial, within the meaning of the constitution.' The first clause of section 28 of article 6 of the constitution reads as follows: 'In every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury.' The right to a public trial is one of the most important safeguards in the prosecution of persons accused of crime. In this case, when the accused is upon trial for a crime, and if convicted his punishment is that he must suffer a life imprisonment,—a civic death,—an order is made by the court which violates the constitutional right of the accused and the statute enacted to protect the rights of parties in both civil and criminal cases. * * *

"In this case it is apparent that the constitutional rights of Murray were violated in the order of the court to the police officer stationed at the door of the courtroom 'that he should stand at the door, and see that the room is not overcrowded, but that all respectable citizens be admitted and have an opportunity to get in whenever they shall apply.' It is shown beyond question that during the whole trial the courtroom was not overcrowded,

[3]Of course, had this been the case, a proper remedy would have been to remove those particular spectators from the courtroom.

nor were the seats provided for spectators occupied to any great extent. This officer was under the control of the court, and when the court was informed that he was excluding citizens and taxpayers he refused to take any notice of the complaint, and left the officer to exercise his discretion as to what respectable citizens he should admit. * * * The order of the court stationing the policeman at the door, with directions to admit none but respectable citizens, was not only a violation of the constitution, but it was a direct violation of the public statutes of this state. * * * The judge who presided at the trial of this case was as much bound by this provision of law as the humblest citizen. The trial may have been an impartial one; the respondent may have been justly convicted; but it still remains that it was accomplished in violation of his constitutional and statutory right to a public trial.''

Although not argued by the state, it might be mentioned here that the fact that the court offered to permit the defense attorney to designate certain persons to remain in the courtroom, ''the ones necessary for his defense,'' does not prevent the court's action from constituting error. See *United States* v. *Kobli* (1949 C. A. 3d Pa.) 172 F. 2d 919. The state, in its brief, does point out that at the time of the exclusion order, twenty-four witnesses had already testified, and the accused was at the time testifying on cross-examination.[4] The state says, ''The fact remains that most of the trial had been concluded before exclusion of spectators.'' It is also pointed out that when the trial resumed the next day, appellant did not renew his objection to the exclusion of the public. As stated in 21 Am. Jur. 2d 299, Section 260:

''The constitutional guaranty of public trial applies to the entire trial and may be violated by exclusion of the public from a part of the trial. The trial, for this purpose, consists of the proceedings for impanelment of the jury, the opening statements of counsel, the presen-

---

[4] One other witness testified before court adjourned for the day.

tation of evidence, the arguments, the instructions to the jury, and the return of the verdict.''

We do not think it was necessary for this objection to be renewed since counsel had made it very clear on the day before that he was objecting and excepting to the court's order clearing the courtroom. Be that as it may, we think reversible error was committed when the public was excluded on January 19. As set forth in 21 Am. Jur. 2d 304, Section 269:

''When a defendant's right to public trial has been violated over his timely objection, it has generally been held that he is not required to show that he suffered actual prejudice as a result. Some cases state that prejudice is presumed. Others say that when the constitutional right is violated, prejudice is conclusively presumed, or that such a violation necessarily implies prejudice and more than that need not appear.''

Reversed and remanded.

Cobb, J., not participating.