John H. BROWN *v.* STATE of Arkansas

CA CR 05-33                                                 237 S.W.3d 95

Court of Appeals of Arkansas
Opinion delivered June 14, 2006

*David O. Bowden*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. John H. Brown was charged in the Circuit Court of Saline County with one count of first-degree sexual assault under Ark. Code Ann. § 5-14-124 (Supp. 2001). The charge was based upon a complaint by Brown's fifteen-year-old niece by marriage, who went with her parents to the Saline County Sheriff's office on August 4, 2003, to make the allegation against him. Brown was found guilty in a jury trial and was sentenced to twenty-five years in the Arkansas Department of Correction. Brown filed a motion for a new trial in which he asserted that, due to actions of the prosecuting attorney and certain rulings of the trial court, Brown had been deprived of fundamental fairness and due process of law and of his right to a fair and impartial trial.

Brown appeals his conviction and motion for new trial, which was deemed denied by the trial court. He raises five points: 1) that no substantial evidence supports the verdict, absent passion, prejudice, and speculation; 2) that the trial court erred by failing to require proper discovery and by failing to enforce its own discovery order; 3) that he was denied the right to a full, fair, and public trial; 4) that he was denied the right to a recognized defense and to a full and fair trial; and 5) that the State engaged in a prolonged, blatant, and repeated pattern of misconduct in order to inflame the passions of the jury against him. We find merit in the second point. Therefore, the case is reversed and remanded to the trial court.

### The sufficiency of the evidence

As his first point on appeal, Brown contends that "there was no substantial competent evidence from which a rational finder of fact could find guilt beyond a reasonable doubt absent passion, prejudice and speculation." We do not reach the merits of this point because it is not preserved for our review.

The State's case-in-chief included testimony by Brown's niece, H.M., and by Dr. Jerry Jones, who examined her in July

2004. H.M. testified that in July 2003 she stayed with Brown and her aunt (Brown's wife) while H.M.'s parents relocated their home from Texas to Virginia, where her father took a job as a youth pastor. She stated that the sexual assault occurred on July 8, 2003. She said that at 3:56 a.m., as shown by a digital clock with a lighted dial, she awoke to feel Brown's hand in her pajama pants and his finger in her vagina. She stated that she had been sleeping on the couch in a zipped sleeping bag but that the bag had been pulled down to mid-thigh. She said that she told a friend about the incident, the friend told a second friend, and the second friend told her parents around three days later.

H.M. further testified that her parents took her to local authorities in Arkansas on August 4, 2003, where they made their complaint and were advised to have H.M. undergo a medical examination. She testified that she did not get the exam and that the family left Arkansas the next day. Dr. Jones testified that the findings of an examination he performed on H.M. at Arkansas Children's Hospital on July 7, 2004, were consistent with a history of suspected sexual abuse.

Brown moved for a directed verdict at the close of the State's case. The pertinent part of his motion was as follows:

> That brings us down to the word of [H.M.]. Your Honor, the time line and her mannerisms, her demeanor the entire — the confusion as to dates, the fact that, at least even if unwittingly, the prosecution has given her the language and vocabulary for her testimony. All these things add up to testimony that's incredible and unworthy of belief.
>
> I do not believe that they have made the elements of the crime and we would ask, therefore, for a directed verdict because a finder of fact, a reasonable finder of fact, could not find beyond a reasonable doubt based on the testimony that we have heard that this occurred in the way that they have alleged.

The trial court denied the motion, ruling that the basic elements of the offense "were set out by the witness and it really comes down to a credibility issue." At the close of all the evidence, Brown renewed his motion on the same grounds as previously alleged, and the trial court again denied the motion.

Brown argues on appeal that his conviction was based on "the word of a confused and contradictory complaining witness, a minor who had been coached by her family, the prosecution team

and the inept questioning of the investigating team of the investigating officers." He asserts that no rational finders of fact, without resorting to speculation and without having had their passion inflamed so as to overbear their logic, could find beyond a reasonable doubt that the events described by the victim actually happened.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003). On appeal, the evidence is viewed in the light most favorable to the State, considering only the evidence that supports the verdict. *Id.* The testimony of the victim alone may constitute substantial evidence to support a conviction for sexual assault. *E.g., id.* The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* It is well-settled that it is the job of the jury, as fact finder, to weigh inconsistent evidence and to make determinations in credibility. *Warner v. State*, 93 Ark. App. 233, 218 S.W.3d 330 (2005).

■ Brown's motions for directed verdict asserted that the victim's testimony was incredible and that the State had not "made the elements of the crime." The appellate court will not review a motion for a directed verdict if it merely asserts that the State has failed to prove the elements of the crime and does not specify the missing element. *E.g., Miller v. State*, 328 Ark. 121, 132, 942 S.W.2d 825, 831 (1997). Arguments regarding witnesses' credibility provide no basis for the appellate court to reverse a trial court's denial of a motion for a directed verdict. *See Weber v. State*, 326 Ark. 564, 933 S.W.2d 370 (1996) (rejecting arguments based upon inconsistencies in witnesses' statements as a reason to reverse the trial court's refusal to grant the defendant's motion for a directed verdict). Thus, the first point on appeal is not preserved for our review and we will not address it.

### Discovery

As his second point on appeal, Brown contends that the trial court erred by failing to require that discovery be properly made and by failing to enforce the court's own discovery order. Specifically, he contends that the State should have revealed to him a

calendar that was used to help the victim remember events of the summer in which the alleged assault took place. He points to the requirement of Rule 17.1(d) of Ark. R. Crim. P. (2006), that the prosecutor shall, promptly upon discovering the matter, disclose to defense counsel any material and information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged. The calendar was not revealed to Brown in discovery. When the victim testified at trial that the calendar indeed existed and Brown asked that he be allowed to see it, the trial court denied his request on the basis that it was the prosecutor's work product.

Brown maintains that information he obtained in the course of his investigation caused him to believe that the victim had formulated a diary, journal, or some sort of similar document "that would be related to days and dates of occurrences." He notes that the State's amended information, filed on August 9, 2004, alleged that the assault occurred on or about July 1-15, 2003, but the date given in the original information, filed on November 17, 2003, was July 15, 2003. He also points to contradictions within the victim's trial testimony about the date of the assault. He asserts on appeal, as he did in the trial court, that the establishment of a time line was crucial to his defense because the date that was first alleged could not be reconciled with the summer schedule of the victim's family and was during a time that Brown was hospitalized.

Various motions and responses between the parties followed the filing of the original information. On June 29, 2004, the State wrote in response to a discovery motion by Brown:

> 1. The defendant produced an order requesting the State to produce documents the defense claims [are] crucial to his case. Specifically, the defendant request[s] from the victim, diaries, journals, notebooks, letter, photographs, drawings, notes, memoranda or any other document or writing written by her relating to the facts of this case between the dates of July 1, 2003, to August 1, 2003.

> . . . .

> 3. *There is no proof that the items the defendant request[s] are in existence. If they exist, they are not part of the State's file and the State has not sought to include them.*

> 4. *Considering of course the items the defendant requests exist, the State is under no obligation to produce them.*

(Emphasis added.)

The trial court found on June 30, 2004, that Brown's motion "to cause certain witnesses for the State and those associated with them to provide documents crucial to his case" was well-taken. The court stated in its written order:

> The complaining witness, H.M., is hereby ordered to provide to the Defense any diary, journals, notebooks, letters, photographs, drawings, notes, memoranda or any other document or writing composed by H.M. relating to the facts of this case or to Defendant John H. Brown between the dates of July 1, 2003, and August 1, 2003 that she may have in her possession.

The case went to trial on September 1, 2004. H.M. testified on cross-examination that she, Brown, and his wife had spent the night at another person's house on July 4, 2003, where there was a party. The State objected that testimony about July 4 was not relevant to what happened on July 8. Defense counsel responded that he was trying to establish a time line, and the court allowed the testimony to continue.

H.M. again testified that she had gone to a party in Arkansas on July 4, 2003, adding that she did not remember if the date had been a Friday. She said that she had left for Texas on a Sunday, that she did not remember if it was July 6, and that she had gone to Texas from Virginia rather than from Arkansas. Reiterating that she had been in Arkansas on July 4, she stated that she did not remember what she had done on July 5. She testified that, in order to remember if she had left for Texas on July 6, she "would have to look at a calendar, the calendar that my mom wrote down all her notes from." H.M. said that Ms. Bush, the prosecutor, would have the calendar. The parties approached the bench, and the following colloquy ensued between Ms. Bush, the court, and Brown's attorney, David Bowden:

> MR. BOWDEN: Your Honor, they have a —
>
> THE COURT: Do you have that calendar?
>
> MS. BUSH: I have a calendar. It's our work product.
>
> MR. BOWDEN: No, she just stated that her mother made it and, Your Honor, we had asked for all materials and this has not been provided.

Ms. Bush: It's not part of our case file. This was made in preparation. It's our notes and her notes of just their recollections of when they moved.

Mr. Bowden: This was made in preparation for her daughter to be able to review it.

Ms. Bush: That's exactly right and it's our work product and you don't get my notes either.

Mr. Bowden: She didn't create it for purposes of litigation.

Ms. Bush: Yes, she did.

The Court: That's what it sounds like. Mr Bowden, do you have a motion or anything?

Mr. Bowden: Yes. Your Honor, I would move that we get a mistrial based on the fact that there has not been produced in accordance with Rule 17.1 of the Arkansas Rules of Criminal Procedure the materials that we have a right to expect and have asked for.

Ms. Bush: Your Honor, just like he doesn't get my notes from talking to the witness, he doesn't get my notes that were made specifically in preparation for examining this witness, and that is work product. It is not part of the case file.

The Court: I'm going to rule that it was work product. However, he's got a right to look at it if she relies upon it.

Ms. Bush: She has not relied upon it. She testified it was the 8th.

Mr. Bowden: She just testified she would have to look at it to remember.

Ms. Bush: That's right.

The Court: As a result of your asking her a question about it. I'll note your objection. I'm going to deny your motion.

MR. BOWDEN: Your Honor, may we have a copy of it to review?

Ms. BUSH: No.

MR. BOWDEN: With a short recess to do so?

Ms. BUSH: It's our work product, Your Honor. He's not entitled to that.

MR. BOWDEN: She stated that her mother completed this. We don't have anything other than the State's word that it's their work product.

Ms. BUSH: Her mother is a potential witness as well, Your Honor. It was all done in preparation for trial.

THE COURT: Well, I'm ruling that it's work product at this time, Mr. Bowden. Let's move on.

On re-direct examination, H.M. testified, "My mother helped me construct a calendar of where I was in July and August of 2003. That was a very confusing time for my family during the course of a cross-country move." She further explained, "I was in several states at different times of that period of time. My mother apart from me and my father apart from me at certain times. It was hard for me to remember exactly where we were."

H.M.'s mother later testified, "I had a calendar that I had written out, a calendar of events that I had written out a week before we came down here in July." She denied ever sitting down with H.M. to go over anything or getting together with her on dates.

We now address the discovery violation alleged by Brown.[1] Our decision is governed by Rules 17.1(d) and 17.5 of Ark. R. Crim. P. (2006). Rule 17.1(d) states the following:

> Subject to the provisions of Rule 19.4, the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, posses-

---

[1] Although the State conceded at oral argument that the calendar was not a work product, its concession does not prohibit our own examination of the question.

sion, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

Rule 17.5, which governs matters not subject to disclosure under Rule 17.1, states:

Work product. Except as provided in Rule 17.1(a)(i) and (iv), disclosure shall not be required of research or of records, correspondence, reports or memoranda to the extent that they contain the *opinions, theories or conclusions of the prosecuting attorney or members of his staff or other state agents.*

(Emphasis added.)

Brown argues that the work-product exception of Rule 17.5 does not apply because the calendar was apparently prepared by the complainant's mother and the complainant, who were not members of the prosecutor's staff. He asserts that the calendar was clearly important for the witnesses' impeachment, that the State knew of the calendar's existence and had it under the State's control at some point, and that the prosecution misrepresented this in response to Brown's motion to provide documents. He asserts that the calendar was "a potentially exculpatory written statement" by the complainant and that the State's denial of access to the calendar prejudiced his ability to present his case.

The State contends that the issue of a discovery violation is not preserved for our review because Brown failed to obtain a ruling regarding the calendar, or, alternatively, because he failed to demonstrate prejudice in its nondisclosure. The State argues that Brown did not ask to have the calendar examined *in camera* to enable the court to determine whether it was discoverable, that it was Brown's responsibility to request relief sufficient to preserve his objection for appellate review, and that the absence of the document itself prevents a meaningful review on appeal even if the document was discoverable. We find no merit to these arguments.

In response to Brown's pre-trial discovery request for exculpatory information, the State answered that no such items were in the State's file and that, if they did exist, the State did not seek to include them in the file and had no obligation to produce them. However, when the victim's trial testimony revealed the existence of the calendar that would help her remember the date that she left Arkansas, the State informed the court that it had the calendar but

that it was the prosecutor's work product. Brown moved for a mistrial based upon the fact that the calendar had not been produced in accordance with Rule 17.1. The court denied the motion, ruling that the calendar was a work product prepared in anticipation of litigation. Brown requested a copy of the calendar to review, noting H.M.'s statement "that her mother completed this" and arguing that nothing other than the State's word showed it to be their work product. The State responded that H.M.'s mother was a potential witness and that "it was all done in preparation for trial." In response to Brown's request to have a short recess to see a copy of the calendar, the court again ruled that it was a work product and instructed Brown's counsel to "move on."

██ ██ First of all, we hold that the trial court erred in ruling at trial that the calendar was a work product. The victim testified that, in order to remember if she had been in Texas or Arkansas on a particular date, she would have to look at the calendar that her mother helped her to construct. Thus, the calendar represents a statement of the witness's belief about dates and does not fall within the work-product exception of Ark. R. Crim. P. 17.5, which applies only to the prosecution and its staff. Brown was not allowed to see how dates on the calendar corresponded with dates that he was hospitalized or that the victim's family was in another state. Thus, he was precluded from establishing a time line and making his argument that testimony of the State's key witnesses was not credible. The trial court erred in not finding the calendar discoverable under Rule 17.1 as exculpatory information regarding the offense charged.

██ We do not agree with the State's assertion that Brown failed to obtain a ruling sufficient to preserve this point on appeal. After the trial court denied his motion for a mistrial based upon the prosecutor's failure to disclose the calendar, Brown asked to examine it. The court's directive that he "move on," as shown in the colloquy printed above, operated as a denial of Brown's request to examine the undisclosed exculpatory document. We know of nothing further that the court was required to do to make clear its ruling that the calendar was the State's work product, to which Brown would be denied access.

██ The State asserts that the absence of the calendar in the record prevents our meaningful review of this point. While we do agree that the calendar is not in the record and, therefore, is

unavailable for our examination, Brown's inability to place the document into the record resulted from a combination of the State's failure to provide it to him before trial in compliance with the court's discovery order, the trial court's erroneous ruling at trial that the calendar was a work product, and the court's refusal to order the State to allow Brown to examine the calendar during a recess so that he could determine whether to proffer it for the record. We also know from the testimony presented that the calendar could have contained information possibly exculpatory to Brown. Therefore, we hold that the absence of the details of the information on the calendar does not prevent our review of this point on appeal.

■    The key to determining if a reversible discovery violation exists is whether an appellant was prejudiced by the prosecutor's failure to disclose. *Scroggins v. State*, 312 Ark. 106, 116, 848 S.W.2d 400, 405 (1993).[2] We note that the right of cross-examination includes the right to show that testimony is unbelievable, because such evidence can make the difference between conviction and acquittal. *Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987). Here, the calendar was important to Brown's attempts to establish a time line and to impeach the complainant and her mother. This information was not available to Brown otherwise. We hold that Brown was prejudiced by the prosecutor's failure to disclose the calendar. Therefore, the conviction is reversed and this case is remanded to the trial court for a new trial.

### A full, fair, and public trial

Brown contends that the exclusion of family members from the courtroom during the victim's testimony denied his right to a

---

[2]  The dissent, focusing on the date that the calendar was created, incorrectly states that the discovery order "directed the State to produce documents written by the victim between the dates of July 1, 2003, to August 1, 2003." We again note the actual wording of the order, which was filed June 30, 2004:

> The complaining witness, H.M., is hereby ordered to provide to the Defense any diary, journals, notebooks, letters, photographs, drawings, notes, memoranda or any other document or writing composed by H.M. *relating to the facts of this case or to Defendant John H. Brown between the dates of July 1, 2003 and August 1, 2003* that she may have in her possession.

(Emphasis added.)

full, fair, and public trial. He asserts that he was supported at trial by his in-laws, whom he characterizes as the people who knew H.M. best, who did not believe her allegations, and who wanted to hear her testimony.

Both the United States and Arkansas Constitutions provide that a criminal defendant "shall enjoy the right to a speedy and public trial." U.S. Const., amend. 6; Ark. Const., art. 2, § 10 (1984). When a defendant's right to a public trial has been violated over his timely objection, prejudice need not be shown for reversal. *Taylor v. State*, 284 Ark. 103, 679 S.W.2d 797 (1984); *Sirratt v. State*, 240 Ark. 47, 398 S.W.2d 63 (1966). In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury. *Waller v. Georgia*, 467 U.S. 39, 46 (1984). In *Sirratt v. State, supra*, the supreme court set forth these purposes of a public trial:

> The guaranty of public trial has always been recognized as a safeguard against any attempt to employ the courts as instruments of persecution. And the common-law right had already, at the time of the Sixth Amendment's adoption, come to be regarded as an essential guaranty for this purpose. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power, not only as to gross abuses, but also minor ones, such as indolence or petty arbitrariness. Other benefits of publicity have been cited, however; for example, it has been suggested that witnesses may testify more truthfully because of the greater risk that false testimony might be exposed.

240 Ark. 47, 52, 398 S.W.2d 63, 66 (citing 21 Am. Jur. 2d 298, § 258).

Before H.M. took the stand at trial, the State requested the exclusion from the courtroom of two or three of her family members (specifically, a great-uncle and a grandmother) because the victim did not want to testify in front of them. Brown resisted the motion, noting that the victim's family were also his in-laws and that he had a right to an open trial before the public. He argued that there was no authority to exclude them and that H.M. might not want to "tell an untruth in front of her family members." The trial court granted the State's motion, noting that it had authority to insure that a witness testified free of intimidation and observing

"this is not intimidation of the sort that a witness would be afraid but it is intimidation of a different sort."

The State contends that exclusion of family members was permissible as a narrowly drawn, partial closure of the trial. It argues that Brown acquiesced in the court's ruling, and that witnesses, including children, should be able to testify in an atmosphere free from potential humiliation or intimidation. The State cites *Gadberry v. State*, 46 Ark. App. 121, 129, 877 S.W.2d 941, 945–46 (1994) and its summary of cases demonstrating special consideration of child victims who testify in court. We find little guidance from the facts in those cases, such as a very young child being allowed to sit on a relative's lap while testifying.

■ A defendant cannot agree with a trial court's ruling and later attack the ruling on appeal. *See, e.g., Banks v. State*, 354 Ark. 404, 410, 125 S.W.3d 147, 151 (2003). Brown initially resisted the State's motion to exclude certain family members; when the trial court ruled in the State's favor, however, Brown stated, "Then I want the entire family excluded, Your Honor." Because Brown acquiesced in this exclusion of family members, and perhaps even invited it, we will not entertain his contention on appeal that the ruling was in error.

### A recognized defense and a full and fair trial

As his fourth point, Brown contends that the rulings of the trial court denied his right to a recognized defense and to a full and fair trial. He complains that the trial court ruled as irrelevant and inadmissible all evidence that would have supported his defense of "a general denial based on a reckless and/or vindictive prosecution." He asserts that he was never allowed to ask questions about a rift within the family that preceded the alleged crime. He complains that the police interview of H.M., which occurred three weeks after the alleged crime, lasted only eighteen minutes; that the questioning was unprofessional; and that at least one experienced police officer thought that "her affect and demeanor, as well as that of her parents, was inappropriate" under the circumstances.

Brown points to the denial of his motion *in limine* to allow testimony by Lt. Earnest Whitten, head of the Internal Affairs Division of the Little Rock Department, as an expert witness in investigation and interrogation in cases of sexual abuse against children. The trial court ruled that the police investigation of the crime was not an issue, and it noted that it would not allow the

State's witnesses to testify regarding the alleged victim's credibility. Brown complains that the court "backpedaled" from its ruling, repeatedly allowing the State to make the point that Brown would not have been arrested had deputies not believed H.M. He asserts that the investigating officers were allowed to give their own self-serving versions and that he was at a disadvantage by having no witness to challenge their sloppy methods and conclusions.

█ The decision of whether to admit relevant opinion evidence rests in the sound discretion of the trial court, and its ruling will not be reversed absent an abuse of discretion. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Furthermore, there was no proffer of the testimony to be given by Whitten. We hold that the trial court did not abuse its discretion in denying the motion *in limine* to allow the testimony of Lt. Whitten as an expert witness.

*Prosecutorial Misconduct*

Brown contends as his fifth point on appeal that "the State engaged in prolonged, blatant, and repeated pattern of misconduct that it knew or should have known to be such as [would] inflame the passions of the jury against the defendant." Brown asserts that the prosecutor utilized H.M. as a political pawn and, further, that "what was probably intended to simply embarrass and harrass [Brown] turned into a witch hunt on the part of the prosecutor." He asserts that political revenge was behind the filing of charges and that the prosecutor's tactics rendered the proceeding a "trial ritual" rather than a fair contest.

The background of this case, as set forth under this point in appellant's brief, includes Brown's 1996 political race as the Republican nominee for Saline County Sheriff against his former boss, Sheriff Judy Pridgen. We here attempt to highlight the allegations he presents. Pridgen forced Brown's resignation as her chief deputy because of his desire to further investigate "the boys-on-the-track murder." Her attorney, George "Bucky" Ellis, threatened in 1996 to call Brown's integrity into question in court because Brown threatened a defamation suit against Pridgen; Ellis did so in the present case when he testified unfavorably about Brown's reputation. During the pre-trial period, a website that was maintained by Robert Herzfeld, the prosecuting attorney of Saline County, contained "press releases" with articles publicizing the

sexual assault charge against Brown and linking him with the antics of his wife, the former city treasurer of Shannon Hills, who pled guilty to embezzling city funds, was convicted of writing hot checks in Sherwood, and ultimately served time in the Arkansas Department of Correction. The website invited the general public to contact the prosecutor for more information.

Brown asserts that fraud was committed upon the court and the defense by the prosecutor's initial denial of the calendar's existence and its later claim of "work product." Further, he complains that a demonstrative aid manufactured by the State falsely summarized evidence and attempted to make him "look like an inveterate liar" because he claimed a longer career in law enforcement than was shown on CLEST (Commission on Law Enforcement Standards) forms. He asserts that the complainant had been coached beyond the allowable limits of witness preparation; that he and his witnesses were ridiculed, and witness Sheriff Phil Mask was wrongly investigated for giving testimony favorable to Brown; that police officers who testified for the State were wrongly allowed to testify that they arrested only people who were considered to be guilty; and that elicitation from the complaining witness about her belief that lying is a sin was an "appeal to religion" prohibited by Ark. R. Evid. 610.

Brown cites *Jackson v. Virginia*, 443 U.S. 307 (1979), for the proposition that prosecutorial misconduct exists when the denial of due process is so great "as to shock the conscience and turn the trial from a fair tribunal into a 'trial ritual.' " Brown asserts both that any of the violations he has raised require reversal and a new trial, and that the entire proceeding amounted to a denial of substantive and procedural due process under the federal and state constitutions. In its response to Brown's motion for a new trial, the State asserted that there was no prosecutorial misconduct at trial and that the constitutional claims were unfounded accusations that did not give rise to a new trial. The State essentially takes the same position on appeal.

It is rare that a prosecutor's appeal to the juror's passions is so great as to require reversal. *E.g., Muldrew v. State*, 331 Ark. 519, 522, 963 S.W.2d 580, 582 (1998). In considering grounds for a new trial, powers of the trial court are great and the latitude of discretion is broad. *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977). The circuit court has the discretion to grant new trials where it has reason to believe that the verdict resulted from excitement, passion, prejudice, or any factor other than a calm

consideration of the facts in evidence. *Id.* We will not reverse the trial court's decision on appeal unless there has been an abuse of discretion. *Id.*

Brown asks us to consider the politics that allegedly served as a background of this case, but we are unable to examine this issue without further research or citations to authority. Nor does Brown refer this court to any part of the record showing that defense witness Sheriff Mask was investigated for stating his favorable opinion of Brown. Therefore, we will not address those parts of his argument. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

■ Regarding Brown's assertion that the prosecutor improperly used his website with "press releases" about Brown and his wife, the State correctly notes that a prosecutor has a duty to keep the public informed. Brown also asserts that the prosecutor's office stonewalled his request for any e-mails generated by the prosecutor's inviting the public to contact his office for further information regarding this case. However, over the State's objection, the trial court received into evidence Brown's faxed copy of an e-mail purportedly sent from the prosecutor's office. Upon hearing the court's denial of his request that other e-mails be produced, Brown said, "That's fine, Your Honor. We'll be asking via FOIA anyway." A party who received the relief requested has no basis for appeal. *Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996).

As for Brown's allegations that a demonstrative aid prepared by the State was inaccurate and improperly attacked his testimony, we will not address the merits of an argument where it is not shown that prejudice occurred. *Robinson v. State*, 348 Ark. 280, 72 S.W.3d 827 (2002). Brown was able to clarify through his own testimony why there were discrepancies in the forms that related to his employment in law enforcement. Furthermore, the trial court admonished the jury that the aid was prepared by the State, was used for demonstrative purposes only, and was not to be considered as evidence.

■ We do not condone all the actions of the prosecution in this case. However, we conclude that the instances summarized above, whether considered individually or collectively, do not arise to a level of misconduct such as to inflame the passions of the jury against the defendant. Furthermore, despite our holding in the second point that a discovery violation occurred when the pros-

ecutor failed to disclose the calendar, we do not agree with Brown that the failure to disclose constituted prosecutorial misconduct.

Reversed and remanded.

GRIFFEN and NEAL, JJ., agree.

PITTMAN, C.J., concurs.

BAKER and ROAF, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I dissent from the majority's decision that appellant was prejudiced by the prosecutor's failure to disclose the calendar, and its holding that this failure requires that the conviction be reversed and the case remanded for trial. With this decision, the majority establishes a new standard of review for cases of alleged discovery violations: Prejudice is presumed when the evidence is unavailable for review due to a defendant's failure to proffer it.

As the majority correctly states, "[T]he key to determining if a reversible discovery violation exists is whether an appellant was prejudiced by the prosecutor's failure to disclose." *Scroggins v. State*, 312 Ark. 106, 116, 848 S.W.2d 400, 405 (1993). The majority then finds that the calendar was important to Brown's attempts to establish a time line and to impeach the complainant and her mother. However, the majority does not explain how the establishment of a time line, based on this calendar, would have been exculpatory or would have tended to negate guilt. As our supreme court has noted exact dates are not critical particularly where, as here, appellant's defense is denial.

> Generally, the time a crime is alleged to have occurred is not of critical significance, unless the date is material to the offense. *See* Ark. Code Ann. § 16-85-405(d) (1987); *Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995); *Harris v. State*, 320 Ark. 677, 899 S.W.2d 459 (1995); *Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992). "That is particularly true with sexual crimes against children and infants." *Id.* at 317, 829 S.W.2d at 416. Any discrepancies in the evidence concerning the date of the offense are for the jury to resolve. *Wilson*, 320 Ark. 707, 898 S.W.2d 469 (citing *Yates v. State*, 301 Ark. 424, 785 S.W.2d 199 (1990)). In cases of rape, the evidence is sufficient if the victim gave a full and detailed accounting of the defendant's actions. *Id.* Moreover, where the defense is that the sexual acts never occurred and were entirely fabricated, the

lack of exact dates are not prejudicial to the defendant. *See Harris*, 320 Ark. 677, 899 S.W.2d 459; *Fry*, 309 Ark. 316, 829 S.W.2d 415.

*Martin v. State*, 354 Ark. 289, 295-96, 119 S.W.3d 504, 508 (2003).

The majority's failure to explain why the establishment of a time line was relevant to appellant's defense or would have impeached the credibility of the complainant or her mother is understandable given that the calendar is not in the record for our review. Our supreme court has explained this difficulty in evaluating evidence not in the record:

> [T]he fact remains that this court cannot begin to review the merits of Appellant's argument on this point without having any clue regarding the nature of the [] evidence. It is well settled that it is Appellant's burden to bring forth a record that demonstrates error. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Lukach v. State*, 310 Ark. 38, 834 S.W.2d 642 (1992). In the absence of the controverted evidence, we simply cannot ascertain whether Appellant was prejudiced by the trial court's ruling. It is axiomatic that this court will not presume prejudice where the appellant offers no proof of it. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001); *Tucker v. State*, 336 Ark. 244, 983 S.W.2d 956 (1999).

*Rollins v. State*, 362 Ark. 279, 208 S.W.3d 215 (2005).

We have never presumed prejudice. The majority offers that the establishment of a time line would have helped impeach the victim and her mother. According to the majority, the denial to the defense of access to the calendar requires a new trial. While we do not know much about the calendar, we do know that: First, it was prepared the week before trial preparation in July 2004; Second, it was written by the victim's mother. Although the majority appears to accept appellant's argument that the trial court's discovery order was violated; in fact, the discovery order directed the State to produce documents written by the victim between the dates of July 1, 2003, to August 1, 2003[1]. I cannot fathom how the failure to produce a calendar with notes written by the victim's mother approximately a year after the events alleged in

---

[1] The majority reiterates the wording of the discovery order in a footnote contending that reading "between" in its adverbial form modifying "composed" is incorrect. Even

the felony information violates the court's order to produce documents written by the victim one year earlier contemporaneously with those events. Nor can I understand how notes prepared a year after the events would have been exculpatory or would have tended to negate appellant's guilt. Therefore, although I agree that the calendar was not the prosecutor's work product, I cannot agree that the State was required to provide the calendar pursuant to Rule 17.1(d) of the Ark. R. Crim. P. (2005).

The implication, and inference is required because the prejudice is never stated by the majority or the appellant, is that the non-contemporaneous notes on the calendar would allow appellant to impeach the victim and her mother as to the accuracy of the date of the events and that any discrepancy of the dates would bring into question the credibility of the witnesses. The problem with that premise is that the discrepancy of the date was evident in the two informations filed by the State. The first identified the date of the assault as July 15, 2003, while the second, filed in August 2004 after the July 2004 trial preparation and the creation of the calendar, identified the date of the assault as on or about July 1-15, 2003. Contradictions within the victim's trial testimony about the date of the assault were evident at the time of the trial. Appellant's counsel cross-examined both the victim and her mother about the creation of the calendar. Appellant moved for a mistrial because the State had not provided him with the calendar prior to trial, yet appellant never asked the court to review the calendar or proffered the calendar for appellate review. Nothing in the record, appellant's argument, nor the majority's opinion, identifies how a more detailed two-week time line would be exculpatory to the defendant. The majority's presumption that appellant was prejudiced because the creation of a two-week time line based upon a review of the calendar would allow appellant to impeach the witnesses' credibility concerning discrepancies, cannot support a finding of prejudice when the information and testimony identifying the discrepancies were before the jury.

In this case, appellant does not argue, and the majority does not explain, the prejudice appellant suffered by the alleged discovery violation. Appellant never asked the court to make the calendar a part of the record for appellate review, yet the majority finds that

reading the phrase to mean writings telling about events or describing appellant between those dates, I still cannot see how this calendar with its notes could result in exculpatory evidence.

the omission of the non–contemporaneous calendar requires reversal. While I do not believe it is this court's role to engage in speculation as to the contents of the calendar, were I to engage in such speculation I still cannot conceive of a plausible situation where the contents of the calendar would be exculpatory or material to appellant's defense in this case.

I would affirm on all points.

ROAF, J., joins.