2009 Ark. 202

**STATE of Arkansas, Appellant,**

v.

**John H. BROWN, Appellee.**

**No. CR 08–826.**

Supreme Court of Arkansas.

April 16, 2009.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellant.

Law Offices of John Wesley Hall, Jr., by: Patrick J. Benca, Little Rock, for appellee.

ANNABELLE CLINTON IMBER, Justice.

The State of Arkansas appeals an order of the Saline County Circuit Court granting postconviction relief to Appellee John H. Brown in accordance with Arkansas Rule of Criminal Procedure 37. On appeal, the State argues that the circuit court erred in concluding that Brown had demonstrated the prejudice required for postconviction relief pursuant to Rule 37 and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because postconviction proceedings under Rule 37 are civil in nature, the State is entitled to appeal from the circuit court's grant of Brown's Rule 37 petition. *See, e.g., State v. Dillard,* 338 Ark. 571, 573, 998 S.W.2d 750, 751–52 (1999). Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(7) (2008). We reverse and remand to the circuit court for further findings.

Brown was charged by information filed November 17, 2003, with one count of sexual assault in the first degree. The information listed the date of the alleged offense as "on or about" July 15, 2003. The information was amended on August 9, 2004, to reflect that the alleged offense occurred "on or about" the time period

between July 1, 2003, and July 15, 2003. According to the affidavit for warrant of arrest filed with the original information, Brown was accused of digitally penetrating the vagina of his then fifteen-year-old niece, H.M., who was under his temporary care at the time. The affidavit stated that H.M.'s parents reported the incident to the Saline County Sheriff's Office on August 4, 2003.

Brown was tried before a jury on September 1 and 2, 2004. At the trial, H.M. testified that the digital penetration occurred on July 8, 2003, at precisely 3:56 a.m. She further testified that she left Brown's residence and stayed at her grandparents' home on July 9, 2003, and that her parents picked her up from there on July 11, 2003. On cross-examination, Brown's trial counsel pointed out that the affidavit for warrant of arrest, prepared by Detective Aaron Washington of the Saline County Sheriff's Office and based upon H.M.'s statement, stated that the date of the digital penetration was July 15, 2003. H.M. testified that she had told prosecutors when the alleged offense occurred. She also stated that her mother had helped her remember and "figure out exactly how our summer went." With regard to what she had told the investigating officers at the time of her statement, H.M. stated that she informed them that she could point out the date on a calendar and that she knew that it had occurred on a Tuesday, but that the officers did not ask her to point to the date on a calendar.

As Brown's trial counsel elicited testimony from H.M. regarding when she left Arkansas and moved to Virginia with her family, H.M. stated, "I don't remember any of this. I'd have to look at a calendar, the calendar that my mom wrote down all her notes from." H.M. said that the calendar was in the prosecutor's possession. At a bench conference immediately thereaf-

ter, Brown's counsel informed the circuit court that the calendar had not been provided to the defense during discovery. The prosecutor stated that the calendar was made in preparation for trial, that it contained notations written by the prosecutors, and that it was the State's work product. Brown's counsel disagreed and moved for a mistrial on the basis that the calendar had not been provided in accordance with Arkansas Rule of Criminal Procedure 17.1; the court denied this motion. The court also declined to give Brown's trial counsel an opportunity to review the calendar. On redirect examination, H.M. stated that her mother had helped her construct the calendar and that they "sat down for about a week to figure out exactly how the whole thing went on the calendar." H.M.'s mother testified that she had constructed the calendar but that she "did not sit down with [H.M.] and go over anything."

Brown was convicted and sentenced to a term of twenty-five years' imprisonment. Following the filing of the judgment and commitment order, Brown filed a motion for new trial based in part on the prosecution's failure to provide the calendar. He argued that the date of the alleged sexual assault was critical to his defense and that the calendar could have contained exculpatory material, making it discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This motion was deemed denied. Brown filed a timely notice of appeal of his conviction.

The Arkansas Court of Appeals reversed and remanded for a new trial, holding that the circuit court erred in ruling that the calendar was work product of the prosecution. *Brown v. State,* 95 Ark.App. 348, 237 S.W.3d 95 (2006). The court of appeals opinion noted that the State had conceded at oral argument that the calendar was not work product; however, the

court nevertheless chose to fully examine the issue. *Id.* at 357 n. 1, 237 S.W.3d at 101 n.1. The court held that the calendar did not fall under the work-product exception of Arkansas Rule of Criminal Procedure 17.5(a), which exempts disclosure of "research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecuting attorney or members of his staff or other state agents." *Id.* at 359, 237 S.W.3d at 102. The court pointed to H.M.'s testimony regarding her mother's help in constructing the calendar, which demonstrated that the calendar was "a statement of the witness's belief about dates," rather than a document containing the prosecutors' beliefs. *Id.* The court also held that the calendar was discoverable under Arkansas Rule of Criminal Procedure 17.1 as exculpatory information regarding the offense charged. *Id.* at 359, 237 S.W.3d at 103. Specifically, the court noted that the prosecution's failure to provide the calendar precluded Brown from establishing a time line and arguing that the State's key witnesses were not credible, as he was not permitted to see how dates on the calendar corresponded with dates that he was hospitalized or that H.M.'s family was out of state. *Id.*

The court of appeals rejected the State's argument that the absence of the calendar in the record prevented a meaningful review of the circuit court's ruling. *Id.* at 359–60, 237 S.W.3d at 103. Brown's failure to proffer the calendar for the record was blamed on the State's failure to provide it, the circuit court's erroneous work-product ruling, and the circuit court's refusal to allow Brown to examine the calendar during a recess. *Id.*

This court granted the State's petition for review and affirmed Brown's convic-

tion. *Brown v. State*, 368 Ark. 344, 246 S.W.3d 414 (2007). We held that a review of the circuit court's work-product ruling was impossible without the availability of the calendar:

A careful examination of the testimony of H.M. and her mother R.M. raises serious concerns about whether the calendar actually contained work product. H.M. testified that she and her mother created the calendar. R.M. testified that she created the calendar, and that Bush did not participate in its creation. However, Bush told the circuit court that members of the prosecuting attorney's office were on the calendar notes. We cannot reach the issue of whether the calendar contained work product because Brown did not proffer the calendar and make it part of the record. Where evidence is excluded by the circuit court, the party challenging that decision must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. The substance of the evidence in this case is not apparent. The evidence concerning what is written on the calendar is conflicting; however, this court cannot review a document that is not before it.

*Id.* at 347, 246 S.W.3d at 416 (internal citations omitted).[1]

Brown filed a timely petition for post-conviction relief under Rule 37.1, arguing in part that his trial counsel's failure to proffer the calendar for the record constituted ineffective assistance of counsel. At the hearing on the petition, Brown presented the testimony of Jim Robinson, a friend and former employee, in order to establish that he had an alibi for the date of July 8, 2003. Specifically, Robinson tes-

---

1. The opinion's references to "Bush" are to Rebecca Bush, deputy prosecuting attorney.

tified that he and Brown left for an out-of-town fishing trip on July 7 and returned home at approximately 6:30 or 7:30 a.m. on July 8.

Brown also elicited testimony from Rebecca Bush, the lead prosecutor, who stated that she first saw the calendar immediately before the September 1, 2004 trial date. Bush testified that H.M.'s mother used the calendar as a family calendar during the month of July 2003, marking various birthdays, anniversaries, and due dates for bills. In a meeting with prosecutors in July of 2004, H.M. was able to remember that the digital penetration had occurred on a Tuesday but was not sure whether it was July 8, 2003, or July 15, 2003. H.M.'s mother then consulted the calendar, because both H.M. and her mother remembered that H.M.'s mother was informed of the allegations at a wedding they had attended that month. Because the calendar showed that the wedding occurred on July 13, 2003, the information was amended to include July 8, 2003, as part of the time period of the alleged offense. In addition, H.M.'s mother added several notations to the calendar describing where various family members were at various times. These notations were made before the calendar was received by the prosecutors. Shortly before the start of trial, the calendar was made available to the prosecutors, who reviewed it with H.M. Bush testified that either she or H.M. wrote the word "finger" on the space for July 8, 2003. Bush further stated that she wrote the initials "GP" and drew an arrow on the space for July 9, 2003, indicating that H.M. had stayed with her grandparents during that time.

Finally, Brown presented the testimony of his trial counsel, David Bowden, who stated that he was not aware until H.M. testified at trial that the digital penetration was alleged to have occurred on July 8, 2003. Bowden testified that he was unable to establish an alibi defense because the time period alleged in the amended information was too broad. He further testified that, had he been granted access to the calendar, he would have used it to impeach the testimony of H.M. and her mother and to establish an alibi defense for the specific date at issue. Finally, Bowden admitted that he did not attempt to proffer the calendar and that his failure to do so constituted ineffective assistance of counsel.

The circuit court entered an order granting Brown's petition for postconviction relief. The order described the calendar's various notations as falling under one of four categories: 1) entries reflecting birthdays, anniversaries, due dates, and the like, which would not have been discoverable because they were irrelevant; 2) entries made by H.M. and her mother reflecting their memories of family events, which would have been discoverable even if they were made at the prosecutors' behest; 3) entries made by the prosecutors, which would constitute nondiscoverable work product; and 4) entries made by H.M. in the prosecutors' presence, which would also constitute nondiscoverable work product. The circuit court ruled that the calendar was "either not work product, or, probably more accurately, was a combination of work product and discoverable material." The court also ruled that the failure of Brown's trial counsel to preserve the record on the discovery issue amounted to deficient performance. Finally, the court ruled that this performance resulted in prejudice, because this court's decision on review would have been different had the record been properly preserved. The State filed a timely notice of appeal from this order.

For its only point on appeal, the State challenges the circuit court's finding that prejudice resulted from the deficient performance of Brown's trial counsel. In appeals of postconviction proceedings, this court will not reverse a circuit court's decision granting or denying postconviction relief unless it is clearly erroneous. *Sparkman v. State*, 373 Ark. 45, 48, 281 S.W.3d 277, 280 (2008). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

The United States Supreme Court has stated that the benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. at 686, 104 S.Ct. 2052. Under the standard set forth in *Strickland*, a petitioner attempting to demonstrate ineffective assistance of counsel must show first that counsel's performance was deficient. *Sparkman v. State*, 373 Ark. at 49, 281 S.W.3d at 281. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, in that the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Furthermore, unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 49–50, 281 S.W.3d at 281. Actual ineffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *Id.* at 50, 281 S.W.3d at 281. Additionally, the burden is on the petitioner to provide facts to support his claim of prejudice. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.* Finally, conclusory statements cannot be the basis of postconviction relief. *Id.*

In the instant case, the State concedes that the failure of Brown's trial counsel to proffer the calendar for the record amounted to deficient performance under *Strickland*. The only issue in contention is whether Brown demonstrated that the requisite prejudice resulted from this deficient performance. The crux of the State's argument is that *Strickland* requires a showing of a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt; in other words, the result at trial would have been different absent the errors. The State contends that a reasonable probability of a different result on appeal of the conviction is not sufficient to demonstrate the prejudice re-

quired under *Strickland*. The circuit court found as follows:

> I cannot say that there is a reasonable probability that the outcome of the trial would have been different had trial counsel made the calendar a part of the record because the inclusion of the calendar would not have changed the evidence considered by the jury. I can say, however, that there is a reasonable probability, indeed a likelihood, that the Defendant's conviction would have been reversed and the case remanded for a new trial had the calendar been preserved for appellate review.

According to the State, this finding does not support the grant of postconviction relief.

 We agree that the circuit court's analysis was misguided. The *Strickland* test requires a showing of "a reasonable probability that, absent the errors, the *factfinder* would have had a reasonable doubt respecting guilt." 466 U.S. at 695, 104 S.Ct. 2052 (emphasis added). The test set forth in *Strickland* clearly contemplates the probability of a different outcome at trial, rather than on appeal. Accordingly, this court has held that it is not enough to show that a failure to object prevented an issue from being addressed on appeal. *Huls v. State*, 301 Ark. 572, 576, 785 S.W.2d 467, 469 (1990) (per curiam). "[T]he standard for judging the effectiveness of counsel requires a showing of more than the failure to raise an issue; the petitioner must establish prejudice at trial under *Strickland*." *Id.* In other words, the petitioner must demonstrate a reasonable probability that the jury would have reached a different result. *Id.* The circuit court's finding that this court would have reversed Brown's conviction on direct appeal is insufficient for a grant of postconviction relief.

 Moreover, the circuit court found that there was not a reasonable probability that the result at trial would have been different absent the error "because the inclusion of the calendar would not have changed the evidence considered by the jury." Such a finding, however, fails to account for the fact that Brown was deprived of access to the calendar not only at trial, but also in preparation for trial. This case differs from many of our prior ineffective-assistance cases involving counsel's failure to object to the admission of evidence. *See, e.g., Catlett v. State, 331 Ark. 270*, 962 S.W.2d 313 (1998) (per curiam); *Huls v. State, supra.* In such cases, we have analyzed the prejudice prong of *Strickland* by examining the balance of the evidence presented at trial to determine whether a proper objection would have made a difference. As we have stated, "[i]n weighing the prejudice which accrued from an error by counsel, the totality of the evidence before the jury must be considered." *Huls,* 301 Ark. at 576, 785 S.W.2d at 469.

Here, we are presented not only with trial counsel's failure to preserve the issue, but also with the prosecution's failure to provide proper discovery. Therefore, the question is not limited to whether admission of the calendar at trial would have resulted in a different jury verdict. The proper inquiry is whether disclosure of the calendar ahead of trial would have changed the evidence before the jury in such a way as to create a reasonable probability of an acquittal. Accordingly, the circuit court should have considered Brown's representations at the Rule 37 hearing concerning the evidence he could have presented at trial had the calendar been provided in accordance with Arkansas Rule of Criminal Procedure 17.1. Specifically, Brown's trial counsel testified at the Rule 37 hearing that, if he had been granted access to the calendar before trial, he would have

used it to impeach the testimony of H.M. and her mother and to establish an alibi defense for the date at issue, July 8, 2003, as reflected in the proffered testimony of an alibi witness. Pursuant to our holdings in *Catlett, supra,* and *Huls, supra,* that evidence should have been considered in conjunction with the other evidence, actually presented at trial, in order to determine the likelihood of an acquittal.

For the reasons outlined above, we reverse the grant of postconviction relief and remand to the circuit court for a determination of whether there was a reasonable probability that, absent the error by Brown's trial counsel in connection with exculpatory evidence not disclosed by the prosecution, the fact-finder would have had a reasonable doubt respecting guilt.

Reversed and remanded.

GUNTER and DANIELSON, JJ., dissent.

PAUL E. DANIELSON, Justice, dissenting.

While I agree with the majority's analysis in this case, I disagree with its disposition. Because I would affirm the circuit court's order for reaching the right result, albeit for the wrong reason, I respectfully dissent. My review of the circuit court's order granting Rule 37 relief reveals that the circuit court's ruling in this matter complied with the requirements of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1994), in that the circuit court found that defense counsel's performance was deficient and that defense counsel's deficient performance prejudiced Brown's defense:

> The previously-asked questions then must be addressed: Was defense counsel's performance deficient; and, was the deficiency such that the Defendant's rights were prejudiced?

. . . .

The first question must therefore be answered in the positive.

The second question must also be answered in the positive.

As correctly stated by the majority, the State urges that the circuit court's finding that Brown was prejudiced as a result of defense counsel's deficient performance was clearly erroneous. Also correct is the fact that we will not reverse a circuit court's grant of postconviction relief unless it is clearly erroneous. Here, the evidence presented at Brown's Rule 37 hearing demonstrated that, at the very least, Brown could have refuted H.M.'s testimony regarding the date of the act by calling Jim Robinson as an alibi witness, had he had possession of the calendar. We have long held that issues of credibility are to be left to the jury and that the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *See Wallace v. State,* 2009 Ark. 90, 302 S.W.3d 580 (2009). With that in mind, I cannot say that the jury in a new trial would not have had reasonable doubt regarding Brown's guilt, and, accordingly, I would hold that defense counsel's deficient performance clearly prejudiced Brown's defense.

While the circuit court may have reached its decision regarding the prejudice prong using a different analysis than this court would have had it do, the circuit court nonetheless reached the right result—that Brown was prejudiced by his defense counsel's deficient performance. Thus, the circuit court's ruling was not clearly erroneous. Even where we have disagreed with a circuit court's reasoning, we have affirmed, for a different reason, the circuit court's ruling for reaching the right result, *see Rollins v. State,* 362 Ark.

279, 208 S.W.3d 215 (2005), and we should do the same here.

GUNTER, J., joins.