2009 Ark. 374

**Ricky Earl WHITE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1402.**

Supreme Court of Arkansas.

June 25, 2009.

William R. Simpson, Jr., Public Defender, Sharon Kiel, Deputy Public Defender, by Clint Miller, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by Christian Harris, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Ricky Earl White was convicted of first-degree murder. Because of previous felony convictions, he was sentenced as a habitual offender to life imprisonment for the murder charge, and his sentence was enhanced by fifteen years for using a firearm to commit the murder, pursuant to Ark.Code Ann. § 16–90–120(a) (Supp.2007). The circuit judge ordered the sentences to run concurrently. White raises one issue on appeal: that the circuit judge abused his discretion in admitting testimony of his possession of a .380 caliber handgun. We affirm.

In the early morning hours of February 2, 2008, Penze Wine was shot and killed in the parking lot of a recording studio in Southwest Little Rock. According to the State's theory of the case, Wine and Carlos Pace had spent time in the recording studio during the evening of February 1, 2008 and the early morning of February 2, 2008. They were drinking beer, and when they had consumed it all, they decided to drive down the street to a gas station to purchase more beer. After doing so, Wine and Pace returned to the studio, where some of the other people present said they wanted more beer as well. After that request, Pace testified that Wine and he again left the studio and got into Wine's car. Apparently, as Wine began to back up, he bumped into White's car.

It was Pace's testimony that he knew White and recognized him when Wine and he got out of the car.[1] Pace told the jury that he did not see any damage to White's

---

1. White was also known as "Big Baby."

car and that Wine said, "I'll pay for any damage or whatever." Pace's testimony was that there "wasn't an argument" between Wine and White, but that White "was just like, 'you ran into my car, you hit my car.'" Pace then told the jury, "Penze [Wine] kept saying, you know, repeatedly that, 'I'll pay for any damages.' Next thing I know I heard a shot and saw Mr. Wine on the ground." He then identified White as the person who shot Wine.

Gary Wilkins, a friend of Wine's and Pace's brother, was also at the recording studio on the night in question. He testified that after Pace and Wine left the studio for the second time, right before the shooting occurred, he went to the front door of the building and saw Wine's "car sitting there and that white Cadillac behind it and [he] told them you—all need to come in and get off that parking lot because it's too late out there." Wilkins said that he did not see a gun, but he saw Wine, Pace, and another person standing by the cars and that as he "started shutting the door then [he] just heard a bam." According to Wilkins, he looked outside again, and Wine "was on the ground." He testified that he "heard a shot" and identified White as the person who had been in the white Cadillac that night. He said that he was "a hundred percent" certain that he recognized White as the person who was in the white Cadillac.

The State introduced the testimony of another witness to the shooting, Latonya Miller. Miller told the jury that she was home on the night in question, across the street from the recording studio. She testified that she had a direct view from her front window to the parking lot. She said that she heard "loud conversation" outside of her house and "went to go look out the window." She testified that she saw "a white Cadillac and . . . a white car pulled up in front of the—parked in front of the studio." Next, Miller said:

> As I'm standing there just looking seeing what they was doing, I see one guy with his hands up, well, and one guy with his back towards me. It was a bigger guy with his back towards me. And as I'm looking, I see fire. I seen the guy fall and hit the ground. As I see that, I'm stuttering and I'm like, oh. Got nervous, got scared because I'm like, okay, something happened across the street. I called 911.

Miller then testified that she told the emergency operator that someone had been shot across the street from her house and that "a black guy got into a white Cadillac and he's driving away." The prosecutor later asked Miller if she had ever seen the white Cadillac before, and Miller responded in the affirmative and said she knew the Cadillac because the man that drove it lived "five houses right up the street from me" and "the reason why I knew the Cadillac is because my nephew used to play with his kids up the street." Miller then identified White as the man who owned the white Cadillac and testified that she saw him in the parking lot on the night in question.

Dr. Stephen A. Erickson, the deputy chief medical examiner at the Arkansas State Crime Lab, testified that he performed an autopsy on Wine. It was Dr. Erickson's testimony that the manner of death was homicide. According to Dr. Erickson, Wine died of a gunshot wound to the chest, and the bullet was a "thirty-eight caliber class range." Stan Wilhite testified that he worked for the Little Rock Police Department, Crime Scene Investigation and that he recovered a .380 caliber spent hull from the scene of the crime. While the gun used to kill Wine was not recovered, the State introduced the testimony of Anita Ray, over White's

objection, to the effect that she had seen White with a .380 caliber handgun and knew him to drive a white Cadillac.

■ White specifically maintains in his sole point on appeal that Anita Ray's testimony was inadmissible under Arkansas Rule of Evidence 404(b) because:

Ms. Ray's statement that she had seen Appellant White with a .380 caliber handgun would assist the jury in finding Appellant White guilty of the murder of Penze Wine only if the jury was willing to conclude that Appellant White was a bad man who had a propensity to habitually carry a .380 caliber handgun and that is why he had one with him when he confronted Mr. Wine at the crime scene.

Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b) (2009).

■ It is well settled by this court that testimony of other criminal activity is admissible "if it is independently relevant to the main issue, that is, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal." *See Green v. State,* 365 Ark. 478, 494, 231 S.W.3d 638, 651 (2006). In other words, the evidence offered under Rule 404(b) must make the existence of any fact of consequence more or less probable than it would be without the evidence. *See Lamb v. State,* 372 Ark. 277, 275 S.W.3d 144 (2008). The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, and this court will not reverse absent a showing of manifest abuse of discretion. *See id.*

As a threshold matter, this court must determine whether Rule 404(b) even applies in the context of White's case. Stated differently, did the State, in fact, introduce evidence of White's "other crimes, wrongs, or acts" through Ray's testimony? Ray's testimony, in its entirety, was

PROSECUTING ATTORNEY: Ma'am, would you introduce yourself to the ladies and gentlemen of the jury?

RAY: Anita Ray.

PROSECUTING ATTORNEY: And do you know Ricky Smith—Ricky White? Excuse me.

RAY: Yes, sir.

PROSECUTING ATTORNEY: Ricky Earl White. Do you see him in the courtroom here today?

RAY: Yes, sir.

PROSECUTING ATTORNEY: Where is he?

RAY: Right there (witness indicating).

PROSECUTING ATTORNEY: May the record reflect identification.

RAY: Right there in the gray suit.

PROSECUTING ATTORNEY: And how long have you known him and how do you know him?

RAY: I have three boys by his brother and I've been knowing him for a minute.

PROSECUTING ATTORNEY: You've been knowing the family?

RAY: Ricky, uh-huh.

PROSECUTING ATTORNEY: So you've known him for quite some time?

RAY: Yes, sir.

PROSECUTING ATTORNEY: And do you— does he live near you?

RAY: Yes, sir.

PROSECUTING ATTORNEY: And what kind of car have you seen him driving around February of 2008?

RAY: A four-door white Cadillac.

PROSECUTING ATTORNEY: And does he have any nicknames you're aware of?

RAY: Big Baby.

PROSECUTING ATTORNEY: Big Baby?

RAY: Yes, sir.

PROSECUTING ATTORNEY: And have you known him—have you ever seen him with a .380 caliber handgun?

RAY: Yes, sir.

PROSECUTING ATTORNEY: Pass the witness. Oh, before I ask that.

PROSECUTING ATTORNEY: Do you know, were you anywhere around the area when this shooting took place? Are you aware that there was a shooting?

RAY: I am aware of it. My boys, they knew about it; I wasn't there.

PROSECUTING ATTORNEY: But none of you—all knew anything about it first-hand at all?         .

RAY: I was not there, no, sir.

PROSECUTING ATTORNEY: Thank you.

The defense attorney did not ask Ray any questions.

Before Ray testified to the jury, the circuit judge held a hearing to determine whether her testimony was admissible under Rule 404(b), as White had asserted it was not. At that hearing, Ray told the judge that she knew White carried the gun because of an "incident" when he had pulled it on her and her fiancé. In that hearing, the prosecutor told Ray on more than one occasion that "you understand that if you're allowed to testify, you're not to mention anything about the incident [with her and her fiancé], other than you know that he has a .380 and you knew he had it around the time of February 2nd."

At the conclusion of the hearing, the circuit judge ruled: "Okay, I'm going to allow it." Because he did not explain his decision, it is unclear whether he permitted the testimony because he found Rule 404(b) did not apply or because the testimony was independently relevant to the instant case. Regardless, it is evident to this court that Rule 404(b) was not applicable to Ray's testimony. The record reflects that Ray followed the prosecuting attorney's instruction and did not mention the incident in which White allegedly pulled a .380 caliber handgun on her fiancé and her. The only testimony related to the gun was that Ray had seen White with a .380 caliber handgun. As the State correctly points out in its brief before this court, it is not a crime to possess a handgun. Hence, the jury was not informed of any prior criminal or other bad act on the part of White.

In a similar case, this court held that the circuit court did not abuse its discretion by permitting the jury to read a transcript of a telephone call the appellant made from the jail to his mother. *See White v. State*, 370 Ark. 284, 292–93, 259 S.W.3d 410, 416 (2007). The appellant in *White* had been previously charged with the rape of a minor, and the case ended in a mistrial. During the second trial, the State introduced the following statement he made to his mother: "Well, that's what I'm trying to do, and if you work with me, you'll see what I'm saying. There's nothing going to happen. When I told you that last time and I came back home, didn't I?" *Id.* at 293, 259 S.W.3d at 416. In that case, the appellant urged that the statement should have been redacted because portions were inadmissible under Rule 404(b) since they referred to the prior rape trial. *Id.* This court affirmed the circuit court's rejection of that argument and held that "there was no *Rule 404(b)* issue because the statement to be redacted would not cause the jury to be aware that there was an alleged prior similar crime." *Id.*

As in *White,* in the instant case, the jury was not made aware of any prior crime or other bad act by White but was simply told that Ray had seen him with a .380 caliber handgun. Because no evidence of prior crimes, wrongs, or bad acts was presented to the jury through Ray's testimony, Rule 404(b) did not apply. Even if Rule 404(b) did apply, evidence that Ray possessed a .380 caliber handgun was certainly relevant in light of the fact that a .380 caliber shell hull was recovered at the scene of the crime. *See Gilcrease v. State,* 2009 Ark. 298, 15–16, 318 S.W.3d 70, 81 (evidence that appellant possessed a gun similar to that used in the commission of the crime held to be independently relevant proof of the appellant's identity). For these reasons, the circuit judge did not abuse his discretion in admitting Ray's testimony.

While the court does not believe it to be reversible, one ruling adverse to White bears mentioning as a result of our Rule 4–3(i) review. During the prosecutor's closing argument, the following colloquy took place:

> PROSECUTING ATTORNEY: He [White] was identified positively by Gary, by Carlos, and by Latonya, who was across the street. And there was a consistent identification by Eugene Harris. I want to talk a little bit more. Like I said, I hope to God it wasn't just for backing into his car because that's—
>
> DEFENSE COUNSEL: Objection, may we approach?
>
> THE COURT: No. No.
>
> PROSECUTING ATTORNEY: I'll move on.
>
> DEFENSE COUNSEL: I'd like to make a record for this.
>
> THE COURT: He said he would move on.
>
> PROSECUTING ATTORNEY: I'll move on.
>
> DEFENSE COUNSEL: I would still like to make an objection.

> THE COURT: No.

It is unclear from the record exactly what defense counsel wanted to do. Did she wish to approach the bench and make a record in a sidebar conference? Did she want to make a more specific objection in open court before the jury? And, if so, what was her objection? The record leaves us largely in the dark about this scenario. Because it is incumbent on counsel to make a specific objection for our review on appeal, even in the face of the circuit judge's negative response, no reversible error has been shown. *See Dodson v. State,* 341 Ark. 41, 14 S.W.3d 489 (2000).

The record has been reviewed in accordance with Supreme Court Rule 4–3(i), and no reversible error has been found.

Affirmed.