2013 Ark. 89

**STATE of Arkansas, Appellant**

v.

**Juan ESTRADA, Appellee.**

No. CR 12–103.

Supreme Court of Arkansas.

Feb. 28, 2013.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., and Laura Shue, Ass't Att'y Gen., for appellant.

James Law Firm, Little Rock, by: William O. "Bill" James, Jr.; and James Law Firm, by: Lee D. Short, for appellee.

PER CURIAM.

A Pulaski County jury convicted appellee Juan Estrada of one count of rape and one count of first-degree sexual abuse, and appellee was sentenced to life imprisonment and ten years' imprisonment, respectively. We affirmed. *Estrada v. State*, 2011 Ark. 3, 376 S.W.3d 395. Subsequently, appellee filed in the circuit court a timely, verified petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2011), alleging several claims of ineffective assistance of counsel.

A hearing was held on the petition, and the circuit court entered an order granting appellee a new trial based on one ground of ineffective assistance as to the rape conviction and two grounds of ineffective assistance as to the sexual-abuse conviction. It is from this order that the appel-

lant State has filed the instant appeal. Because we determine that the circuit court's decision was not clearly erroneous, we affirm.

As an initial matter, we reiterate that there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State; the former is a matter of right, whereas the latter is not derived from either the United States or Arkansas Constitution, nor is it a matter of right, but is granted pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal (2011). *See State v. Threadgill*, 2011 Ark. 91, 382 S.W.3d 657 (citing *State v. Boyette*, 362 Ark. 27, 207 S.W.3d 488 (2005)). We have held, however, that the State is entitled to appeal from a circuit court's grant of a Rule 37.1 petition, because such postconviction proceedings under Rule 37.1 are civil in nature. *State v. Robinson*, 2011 Ark. 90, 2011 WL 737152. When an appeal involves neither a direct nor an interlocutory appeal following a prosecution, but is an appeal arising from a collateral proceeding, the appeal is civil in nature, and the State is not required to satisfy Rule 3.

This court will not reverse a circuit court's decision granting postconviction relief unless it is clearly erroneous. *See State v. Brown*, 2009 Ark. 202, 307 S.W.3d 587. In an appeal from a grant of postconviction relief on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the trial court clearly erred in holding that counsel's performance was ineffective. *See generally Charland v. State*, 2012 Ark. 246, 2012 WL 1950251. A finding is clearly erroneous when, although there is evi-

dence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Brown*, 2009 Ark. 202, 307 S.W.3d 587. The State may meet this burden by establishing either that trial counsel's performance was not deficient or that there was not a reasonable probability that, but for the deficient performance, the outcome of the trial would have been different. *See id.; see also State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999). With that standard in mind, we address each of the State's points on appeal in turn.

## The Rape Conviction

Appellee was convicted of the rape of C.O., a minor, under Arkansas Code Annotated section 5–14–103(a)(4) (Repl.1997). In his petition for postconviction relief regarding the rape conviction, appellee argued, and the circuit court agreed, that trial counsel had been ineffective in failing to use the victim's recorded statements to police to impeach her credibility.

At trial, then-fifteen-year-old C.O. testified that her mother and appellee's wife were sisters, that appellee's daughter often served as a babysitter when C.O. was younger, and that C.O. was left alone with appellee at times. She further testified that, around the time that she was four years old, appellee would often touch her "private areas," masturbate in front of her, penetrate her vagina with his penis, and kiss her on the mouth and neck "every time [she] was alone with him." She also testified that her family moved to Texas when she was five years old, but that, when they came back to Arkansas for Thanksgiving in 2001 when she was seven years old, appellant again had sexual intercourse with her when she was left alone with him.

Detective Julie Rose of the North Little Rock Police Department also testified at the trial. Detective Rose stated that she had interviewed C.O. multiple times during the investigation of appellee. While C.O. had made recorded statements to Det. Rose regarding the Thanksgiving 2001 allegation, trial counsel did not ask Det. Rose about these statements, and the jury was never informed that the statements existed. Notably, in the recorded statements, C.O. asserted more than once that her grandparents were asleep downstairs during the incident, despite the fact that C.O.'s grandmother had died in 2000.[1] Transcripts of these recorded statements were in the prosecutor's file, but they were not introduced at trial or used to impeach C.O.'s credibility.

At the Rule 37.1 hearing, trial counsel testified that she was aware that C.O.'s grandmother had died in 2000, and she did not have a tactical reason for not using the statements to impeach CO. Counsel admitted that the statements would have been good for impeachment purposes, and she testified that there was "definitely a time line problem" with C.O.'s allegations.

In its order granting postconviction relief, the circuit court determined that trial counsel's failure to use the statements to impeach C.O.'s credibility amounted to deficient performance. Specifically, the circuit court stated, "[T]rial counsel failed to use this inconsistency to cast doubt on C.O.'s recollection of the events, and thereby impeach her credibility." Regarding the prejudice prong of *Strickland*, the circuit court held that the failure to use the statements "was an error that but for its commission, there is a reasonable probability that the outcome of the proceeding would have been different on that offense."

On appeal, the State argues that this decision was clearly erroneous because the time a crime is alleged to have occurred is not of critical significance unless the date is material to the offense, particularly in cases of sexual crimes against children. *See Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009). Moreover, the State contends that providing for a margin of error in the timing given by a victim's testimony produces no prejudice to a defendant who denies the charges as fabrications. *See Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992). Finally, the State contends that, because C.O. testified that there were several rapes over a period of years, it is unreasonable for the circuit court to conclude that inconsistency around the date of the 2001 allegation would have impeached C.O.'s credibility such that the jury would have disregarded all her testimony.

The State's argument fails on two counts. First, we have held that, where there is no physical evidence, and the only evidence against a defendant in an allegation of sexual crimes against a minor is the testimony of the victim, the victim's credibility is highly relevant; trial counsel's failure to impeach that credibility may amount to ineffective assistance when evidence exists that would cast doubt on the defendant's guilt. *See Dillard*, 338 Ark. 571, 998 S.W.2d 750 (citing *Wicoff v. State*, 321 Ark. 97, 900 S.W.2d 187 (1995)). In this case, as in *Dillard* and *Wicoff*, the only evidence of appellee's guilt was the testimony of C.O., and trial counsel knew that the "trial was going to come down to a swearing match between appellee" and the victim. *Dillard*, 338 Ark. 571, 998 S.W.2d 750. Thus, we cannot say that the circuit

---

1. At trial, C.O. did not testify that her grandparents were sleeping downstairs when the 2001 incident occurred.

court was clearly erroneous in finding that trial counsel's failure to use C.O.'s statement as impeachment evidence amounted to ineffective assistance.

Secondly, the State's argument ignores our long-standing rule that we defer to the circuit court's determination on matters of credibility in a Rule 37.1 appeal. *See State v. Barrett*, 371 Ark. 91, 263 S.W.3d 542 (2007) (citing *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001)). |₆Here, the circuit court rejected many of appellee's allegations of ineffective assistance, but it found that, had counsel impeached C.O.'s credibility with her statements to Det. Rose, there is a reasonable probability that the outcome would have been different. Indeed, this was the only ground on which the circuit court found that post-conviction relief was warranted as to the rape conviction. Clearly, then, the circuit court determined that, considering the totality of the evidence presented, this specific bit of evidence could have swayed the jury's verdict had it been presented. We defer to the circuit court regarding matters of credibility, and, as such, we cannot say that the court's decision was clearly erroneous. *Barrett*, 371 Ark. 91, 263 S.W.3d 542.

## The Sexual–Abuse Conviction

Appellee was convicted of first-degree sexual abuse under Arkansas Code Annotated section 5–14–108 (Repl.1997).[2] That statute, as was in effect at the time of appellee's conviction, made it a Class C felony for anyone eighteen years of age or older to engage in sexual conduct with another person who is younger that fourteen years of age and is not the person's spouse.

At trial, then-eighteen-year-old C.P. testified on direct examination that, in December 1999, she and her family came from Texas to Arkansas to see a relative's new baby. On that trip, C.P. testified that she was sleeping on appellee's couch one night when he laid down |₇behind her, that he began rubbing on her vagina over the top of her clothes, that he pulled her pants and underwear down and rubbed his penis against her vagina without penetration. Finally, C.P. testified that appellee stopped when someone came into the house and, when the third person left, appellee went back upstairs and left C.P. alone.

On cross-examination, C.P. testified that she did not tell anyone about this incident until after C.O. told her about appellee's behavior, that she had told Det. Rose that her brother was asleep in the room when the incident occurred, and that she had also told the detective that she was not initially sure when the incident occurred. On re-direct, C.P. stated that she was previously confused about when the incident had occurred, but that she was certain that the event had occurred during that December 1999 trip.

During the Rule 37.1 hearing, trial counsel testified that she was aware that the sexual-abuse charge against appellee was alleged to have occurred between June 4, 1998, and June 4, 1999; that she realized during trial that the December 1999 date was well outside this alleged range; that she failed to object to C.P.'s testimony regarding a date that was outside the dates in the felony information because she felt that the jury was predisposed to believe C.P.'s testimony regardless; that, if there were witnesses in Texas who could have placed appellee there in December

---

**2.** That statute was repealed by Act 1738 of 2001, and first-degree sexual abuse is now codified as second-degree sexual assault at

Arkansas Code Annotated section 5–14–125 (Supp.2003).

1999, that would have been helpful; and that she was unaware of any such witnesses. Appellee's sister, Liria Ramirez, testified that appellee came to Texas in November 1999 and was there through December "pretty much" every year between 1994 and 2004 due to his seasonal work as a painter. Ramirez also testified that trial counsel had not spoken to her prior to the trial. Appellee's other sister, Martha Diaz, corroborated Ramirez's story, testifying that she had picked up appellee in Texarkana in November of 1999 and taken him back to Texas, where he remained until the "latter part of January, close to February" of 2000.

Additionally, conflicting testimony was given during the Rule 37.1 hearing regarding whether trial counsel had ever been provided with Ramirez's and Diaz's names. Trial counsel testified that she was aware of some witnesses who could place appellee in Texas in December 2000, but that she did not inquire as to whether any witnesses could place him there at other times.

In its order, the circuit court found that trial counsel had been ineffective in failing to inquire as to whether any witnesses could place appellee in Texas in December of other years alleged in the charging information and that, had she so inquired, it is likely that she would have discovered the existence of Ramirez and Diaz and the testimony that they would have given regarding appellee's whereabouts in December 1999. This failure to investigate, coupled with counsel's failure to object to the testimony that placed the incident outside the range in the felony information, prejudiced appellee because, but for those errors, there is a reasonable probability that the outcome would have been different on the sexual-abuse charge.

On appeal, the State argues that C.P. testified on re-direct that she could not remember the exact date of the offense, so any testimony by Diaz and Ramirez would not have mattered, as the jury could give C.P. a margin of error for her recollection and convict appellee of the sexual-abuse charge. This argument is without merit.

The State misconstrues C.P.'s testimony regarding confusion about the date of the alleged crime. On direct examination, C.P. testified that it occurred on or about December 9, 1999, which was when her sister gave birth. On cross-examination, C.P. admitted to initially telling police that the incident occurred on a different date, when her grandfather was sick, which C.P. chalked up to being "probably confused about the dates because it was all in the winter." During the State's redirect examination, C.P. explicitly stated that, after she had talked about the incident more and thought about the situation, she "realized that it was actually the trip—that it was my sister that was giving birth—the trip that it happened up here." She then stated that there was "no doubt in [her] mind" as to when or where this took place. She affirmed this specific date on recross-examination, stating that she "determined that this happened on a trip when my sister had her baby after talking to Mr. Jones," and she again affirmed the date on redirect before being released as a witness.

Clearly, the testimony elicited by the State on direct examination and both rounds of re-direct examination focused on nailing down the December 9, 1999 date as the correct date for the crime and on explaining why C.P. initially got the date wrong. Given this, along with C.P.'s own statements that she had "no doubt" that December 9, 1999, was the correct date, we cannot say that the circuit court was clearly erroneous in determining that testimony from two witnesses that directly contradicted C.P.'s testimony and the State's

assertions would not have a reasonable probability of changing the outcome on this charge.

Based on our well-established standard of review under *Strickland,* we hold that the circuit court was not clearly erroneous in its rulings on both of appellee's convictions. Accordingly, we affirm the circuit court's grant of new trial based on ineffective assistance of counsel.

Affirmed.