2013 Ark. 171

**Ricky Earl WHITE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–751.**

Supreme Court of Arkansas.

April 25, 2013.

Kearney Law Office, by: Jack R. Kearney, for appellant.

Dustin McDaniel, Att'y Gen., by: Christian Harris, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

Ricky Earl White appeals an order denying his petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. White was convicted of first-degree murder and sentenced as a habitual offender to life imprisonment for the murder charge, and his sentence was enhanced by fifteen years for using a firearm to commit the murder pursuant to Arkansas Code Annotated section 16–89–120(a) (Supp.2007). His conviction and sentence were affirmed by this court. *White v. State*, 2009 Ark. 374, 326 S.W.3d 421. White asserts that the circuit court erred in denying his petition because his attorney, without consulting him, changed the trial strategy from arguing justification to arguing reasonable doubt that he was the killer, and at the same time, denied him his constitutional right to testify. We affirm the finding of the circuit court that White was wrongfully denied his right to testify and to pursue a

justification defense. However, we also affirm the circuit court's finding that had the defense of justification been pursued, and had White testified, there is no reasonable probability that the fact-finder would have reached a different outcome. On this basis, we affirm the circuit court's denial of White's Rule 37 petition.

This court does not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous. *Sartin v. State,* 2012 Ark. 155, 400 S.W.3d 694. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.* We assess the effectiveness of counsel under the two-prong standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.*

In asserting ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* We indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Sartin,* 2012 Ark. 155, 400 S.W.3d 694. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

White asserts that he made an explicit demand to testify and that this right was denied him by his attorney, Sharon Kiel. Kiel testified at the hearing on White's Rule 37 petition that she was aware that White wished to testify and that he wished to present a justification defense. She further testified that White made himself clear to her regarding his desire to testify and that his understanding on the morning of trial was that they would pursue a justification defense that would include his testimony. According to Kiel, on the morning of trial, without consulting White, she changed the trial plan to a defense of reasonable doubt that White was the killer. This meant White would not testify. Kiel testified that the decision was hers alone and that she took away his ability to testify. The circuit court found that "[p]etitioner should have been allowed to testify on his own behalf, [but the court] does not however find that his testimony would have changed the outcome of his trial." The circuit court thus found that White failed to satisfy the second prong of the *Strickland* test. In other words, the circuit court found that White failed to show that there existed a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *See Sartin, supra.*

■ The trial record reveals that, in the early morning hours of February 2, 2008, Penze Wine was shot and killed in the parking lot of a recording studio in Southwest Little Rock. Gary Wilkins, a friend of Wine's, testified that he, Wine, Carlos Pace, and Eugene Harris were at the recording studio on the night in question. Wilkins further testified that neither he nor anyone he was with had a firearm, that he looked out the door and saw Wine outside by Wine's car, and that a white Cadillac was behind Wine's car. According to Wilkins, he looked away and closed the door, but upon hearing "bam," he looked back out and saw Wine on the ground, and White, who he knew as "Big Baby," get in the white Cadillac and drive off. Pace testified that he was in Wine's car with Wine when they struck White's car upon backing out. According to Pace, he and Wine examined White's car and found no damage, but Wine offered to pay for damages anyway. Pace testified that there was no argument, and the "[n]ext thing I know I heard a shot and saw Mr. Wine on the ground." Pace testified that he, Wine, and White were the only persons present when Wine was shot. Pace identified White as the person who shot Wine and testified that after shooting Wine, White said nothing and drove off.

Proffered testimony of Wilkins showed that he had a conviction for possession of a controlled substance. Proffered testimony of Pace showed that he was on probation and had to abstain from consuming alcohol. Pace confirmed that the gathering at the studio was because Wine was about to leave and serve time in Arizona.

Anita Ray testified, "I've known [White] to carry a .380 gun." She further testified that the police seized one pistol but "I know that Ricky [White] carries a gun. He doesn't leave the house without it." She also testified, "I know he has a

.380 and I knew he had it around the time of February 2nd." Latonya Miller, who lived across the street from the recording studio, testified that she witnessed the shooting. She heard an argument or discussion outside and saw a white Cadillac, and two men. One of the men was facing away from her, and the other man one was facing her and holding up his hands. She then saw "fire" and one man fall and hit the ground. According to Miller, the other man got in the Cadillac and drove away. Miller recognized the Cadillac as White's car and testified that she saw White in the parking lot on the night in question.

Testimony at trial revealed that a single .380 casing was retrieved from the scene and that a single .380 bullet killed Wine. Testimony of Dr. Stephen Erickson was proffered to show that at the time of his death, Wine had a trace amount of cocaine and an alcohol-blood level of .18 grams percent in his system.

White testified at the Rule 37 hearing that when he approached Wine's vehicle, "some words were exchanged." He testified further that he and "the passenger" had a prior conflict, and that gestures were used indicating that he (White) needed to get away from the car if he did not wish to be harmed. According to White, he overheard the passenger tell the driver to back up and hit his car. White testified that the driver did so, and he (White) jumped out of the way. According to White, at this point, the driver and passenger got out of the car and began to argue with him. White then testified that, "Mr. Wine produced a gun and I grabbed him and we went to tussling and the gun went off and he got shot. And when he fell I got in my car and left."

■ After reviewing the evidence offered, the circuit court denied White's petition. White's argument on appeal, in significant part, is based on his assertion that

had he testified, the fact-finder's decision would have been different. We first note that the circuit court did not find White's testimony credible. It is well settled that this court defers to the trial court's determination on matters of credibility in a Rule 37 appeal. *See State v. Estrada,* 2013 Ark. 89, 426 S.W.3d 405, 2013 WL 753061. Further, the circuit court concluded that, even if White had testified at trial, there was no reasonable probability that the outcome of the trial would have been different. A review of the record reveals that counsel's decision to keep White from testifying was based on her concern that he would make a poor witness, that he presented as poorly educated, and that he would have been vulnerable under cross-examination. Counsel stated that, if White had testified, he would have been impeached with prior felonies, including one felony for firearm possession. The impeachment testimony would have bolstered the State's case, given that the gun used in the shooting was never recovered. In addition, the testimony would have undercut White's testimony that the victim was shot with his own gun after the two "went to tussling and the gun went off."

Upon review of the entire evidence, we cannot say that we are left with a definite and firm conviction that the circuit court made a mistake when it found that White failed to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. We cannot say that the circuit court's findings were clearly erroneous.

Affirmed.

BAKER and HART, JJ., dissent.

JOSEPHINE LINKER HART, Justice, dissenting.

I absolutely agree with the majority that Mr. White's trial counsel, Sharon Kiel, committed errors that were so serious that counsel was not functioning as the counsel guaranteed an accused by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, I cannot agree that this case should be affirmed because Mr. White failed to prove he was prejudiced by Kiel's deficient representation.

Mr. White's trial counsel, by her own admission, led him to believe that she was going to trial with a justification defense that would have included Mr. White's testimony. It is not disputed that the change in strategy was never presented to Mr. White. Furthermore, it was not disputed that Mr. White believed that he was going to testify in his own defense, and his trial counsel, without consulting Mr. White, decided not to put him on the stand. This performance was more than just improvident—it denied Mr. White fundamental constitutional rights. Because of Kiel's deficient performance, Mr. White was denied his constitutional right to testify on his own behalf. *See Rock v. Ark.,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In *Williams v. State,* 2011 Ark. 489, 385 S.W.3d 228, we stated that an accused person's fundamental constitutional right to testify cannot be waived by defense counsel. Likewise, Kiel's deficient performance denied Mr. White his fundamental right to have *his* case tried to a jury. *See Calnan v. State,* 310 Ark. 744, 841 S.W.2d 593 (1992). As the Supreme Court in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) stated, trial counsel's performance is not to be viewed in the "abstract," but in the context of "what, after all, is [the accused's], not counsel's trial." (quoting *McKaskle v. Wiggins,* 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)). Because Kiel's deficient representation denied Mr. White fundamental constitutional rights, I believe that this court should hold that it is preju-

dicial per se, much as we did in *Flores v. State*, 350 Ark. 198, 85 S.W.3d 896 (2002), when trial counsel failed to object when Flores appeared at trial in shackles and jail clothing.

However, even if we were to somehow find that Kiel's errors did not constitute prejudice per se, I contend that the majority misapplied the law regarding prejudice. The prejudice prong under *Strickland* requires that the petitioner establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. We have not previously interpreted this requirement to mean that the petitioner must prove that he would have been acquitted. *See Flores, supra.* A "reasonable probability" is a showing sufficient to undermine confidence in the outcome. *Id.* In denying Mr. White's petition, the trial court stated that it did not believe that Mr. White's testimony would have changed the outcome of the trial. The difference is subtle, but significant. For us to have "confidence" in an outcome, we demand that the case be tried in adversarial fashion. *Id.* Failure of the adversarial system undermines that "confidence."

Here, four eye-witnesses, three of whom were previously acquainted with Mr. White, testified that he was involved with the shooting. It is impossible to imagine that any cross-examination,[9] much less the perfunctory cross-examination undertaken by Kiel, could provide the jury with doubt as. to Mr. White's identity as the person involved in the shooting. As Mr. White argues on appeal, this was a situation where the shooting had to be explained. Moreover, contrary to Kiel's testimony at the Rule 37 evidentiary hearing, the trial record shows that disregarding Mr. White's wishes regarding the justification

defense was a key factor in the trial court's decision to exclude evidence of the victim's intoxication and his criminal history. Accordingly, Mr. White was prejudiced because his trial counsel's deficient performance constituted a failure to subject the State's case to adversarial testing. *Id.*

Finally, I believe the majority has misstated the law with regard to our deference to the trial court on matters of "credibility." In the case relied on by the majority, *State v. Estrada,* 2013 Ark. 89, 426 S.W.3d 405, 2013 WL 753061, we rejected the State's appeal from a grant of postconviction relief because trial counsel failed to impeach the credibility of the victim in a juvenile-rape case. There, the trial court found that if the impeachment evidence had been presented, it "could have swayed the jury verdict." I believe the trial court in *Estrada* applied the correct standard. It made no prediction as to the outcome of the trial, nor did it supplant the function of the jury as the finder of fact.

Conversely, in the case before us, the trial judge denied Mr. White's petition because the trial judge did not find Mr. White's testimony credible. However, Article 2, section 10, of the Arkansas Constitution and the Fifth and Sixth Amendments to the United States Constitution guarantees our citizens the right to a trial by jury where the credibility of the testimony is to be decided. Here, due to trial counsel's error, Mr. White was denied his right[10] to have a jury determine his credibility. This deprivation of Mr. White's Constitutional rights satisfies the prejudice prong of *Strickland.*

BAKER, J., joins.