Cite as 2019 Ark. App. 492

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CR–18–659

| | |
|---|---|
| HENRY A. HARMON<br><br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **OPINION DELIVERED:** OCTOBER 30, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-12-515]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Henry A. Harmon appeals the Pulaski County Circuit Court's order denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2018). Harmon argues in five points on appeal that his trial counsel was ineffective and that the circuit court erred in its rulings. We affirm.

### I. *Procedural History*

Harmon was convicted in the Pulaski County Circuit Court of first-degree murder, two counts of aggravated robbery, and aggravated assault and was sentenced to a total of 105 years' imprisonment. He appealed, and this court affirmed his conviction. *See Harmon v. State*, 2014 Ark. App. 70. Harmon filed a petition for review with the Arkansas Supreme Court, which granted the petition, vacated this court's opinion, reversed, and remanded to the circuit court, holding that the circuit court had abused its discretion by excluding DNA evidence. *See Harmon v. State*, 2014 Ark. 391, 441 S.W.3d 891.

Harmon was tried again on December 8–9, 2015, but it ended in a mistrial. On March 8, 2017, Harmon entered into a negotiated plea in which he pled guilty to amended charges of manslaughter and robbery and received consecutive sentences of five years' and forty years' imprisonment, respectively. He filed a timely pro se petition for postconviction relief under Rule 37, arguing that he had received ineffective assistance of counsel. After a hearing, the circuit court filed an order on May 29, 2018, in which it denied the Rule 37 petition. The circuit court stated in its analysis:

First, Harmon argues defense counsel, Tony Brasuell and Bobby Digby were ineffective for their failure to pursue a viable trial strategy. He alleges defense counsel failed to challenge DNA results of Nakita Smith, and also failed to challenge the credibility of state's witness, Rahim Bashir.

Harmon believed Brasuell should have pursued the fact that Smith's blood was found in the car and that she could have committed the offense(s). At the April 26, 2018 hearing, Brasuell testified that he discussed with Harmon additional testing from the crime lab and that it could come with certain consequences that would not be positive for his case. Further, Brasuell testified that Smith's DNA in the car would be of no consequence as it was a known fact that Smith [had been] in the car. Harmon also wanted Brasuell to move to suppress the photo identification of Rahim Bashir. Brasuell informed Harmon this strategy would be more harmful than helpful to his case as it could open the door to Harmon being identified as the assailant of a robbery earlier the same night. Both of Harmon's arguments fail as to trial strategy as Brasuell illustrated reasonable professional judgment in not wanting to open the door to facts that would be more harmful than helpful to his case. Additionally, Brasuell's strategy and tactics are not grounds for a finding of ineffective assistance of counsel. *Bowden* [*v. State*], 2015 Ark. 137[, 460 S.W.3d 769].

Second, Harmon argues he was not properly advised of the length of time he would serve upon his acceptance of the negotiated plea. Digby was co-counsel for Harmon; however, he did not handle much of the trial preparation. Digby testified that Harmon wanted to go to trial, but plea negotiation began before the trial, and he entered a plea. On cross-examination, Digby stated there was an issue with the parole eligibility of the robbery. Digby testified that he realized they misadvised Harmon of his parole eligibility. Harmon was initially told that robbery carried a one-third, one-sixth parole eligibility; however, robbery carries a one-half, one-fourth parole eligibility. Digby expressed Harmon was not happy with the change in parole eligibility, but after they were given time to explain it, he understood and did not want to withdraw his plea. Harmon expressly stated his intent not to withdraw

his plea on the record. (Please see plea transcript p. 7–8). Furthermore, Digby stated he discussed the plea statement fully with Harmon, and Harmon initialed each portion of the plea statement. One of which being, "No one made you any promises regarding parole eligibility, earning of meritorious good time, early release, or anything of that nature in order to get you to enter this plea?"

Ms. Dorothy Harmon, mother of petitioner, testified that Digby informed her that Harmon would be eligible for parole in two and one-half (2.5) years to five years. This is a bare assertion and not corroborated by any other testimony or evidence. Thus, the court finds that Harmon has failed to demonstrate a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial.

From this order, Harmon filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Johnson v. State*, 2018 Ark. 6, at 2, 534 S.W.3d 143, 146. A finding is clearly erroneous when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that the circuit court made a mistake. *Id*.

"The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]." *Mancia v. State*, 2015 Ark. 115, at 4, 459 S.W.3d 259, 264 (citing *Henington v. State*, 2012 Ark. 181, at 3–4, 403 S.W.3d 55, 58). Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance of counsel must show that his counsel's performance fell below an objective standard of reasonableness. *Mancia*, 2015 Ark. 115, at 4, 459 S.W.3d at 264. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Osburn v. State*, 2018 Ark. App. 97, 538 S.W.3d 258. Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id*. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*.

Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

The *Strickland* standard applies to allegations of ineffective assistance of counsel pertaining to possible prejudice in guilty-plea and sentencing proceedings. *Mancia*, 2015 Ark. 115, at 5, 459 S.W.3d at 264. . . . To establish prejudice and prove that he or she was deprived of a fair trial due to ineffective assistance of counsel, a petitioner who has pled guilty must demonstrate a reasonable probability that, but for counsel's errors, the petitioner would not have so pled and would have insisted on going to trial. *Jones v. State*, 2015 Ark. 119, at 5. Further, "on appeal from the denial of a Rule 37 petition following pleas of guilty there are only two issues for review—one, whether the plea of guilty was intelligently and voluntarily entered, [and] two, were the pleas made on the advice of competent counsel." *Mancia*, 2015 Ark. 115, at 11, 459 S.W.3d at 267.

*Davis v. State*, 2018 Ark. App. 540, at 2–4, 564 S.W.3d 283, 286–87.

## III. *Witnesses*

Harmon argues that the circuit court abused its discretion when it excused Hugh Finkelstein, prosecutor, and Robby Golden, defense counsel, from testifying at the Rule 37 hearing. Harmon alleged that Finkelstein had committed a *Brady* violation by withholding the medical records of the State's witness in the two trials held before he negotiated a guilty plea. *See Brady v. Maryland*, 373 U.S. 83 (1963). Harmon also claims that Golden violated his constitutional rights when acting as his trial counsel in the trial(s) before the negotiated plea deal. He contends that Golden filed a direct appeal without his consent or notification and that Golden failed to challenge the sufficiency of evidence to support the convictions.

Harmon did not include his arguments regarding Finkelstein or Golden in his petition below. Rule 37.1(a) requires that all grounds for relief must be raised in the initial pleading. Also, claims against Finkelstein and Golden are not related to the guilty pleas; thus, these claims are not cognizable in a Rule 37 proceeding. *See Moss v. State*, 2010 Ark. 284 (prosecutorial misconduct is not a claim cognizable in a Rule 37 proceeding); *Bryant v.*

4

*State*, 323 Ark. 130, 913 S.W.2d 257 (1996) (when a defendant pleads guilty, the only claims cognizable in Rule 37 proceedings are those that allege the plea was not made voluntarily and intelligently or was entered without effective assistance of counsel).

## IV. *Sentencing*

Harmon argues that his trial counsel was ineffective for his failure to investigate sentencing guidelines, sentencing enhancement, and prior criminal convictions to ensure Harmon's Sixth Amendment right to effective assistance of counsel was honored within guidelines of the law. He complains that the time he had served—1,888 days—was not applied to his aggregate forty-five-year sentence. Instead, he contends that prison officials applied the credit to the five-year sentence, "making [Harmon] complete [the five-year] sentence at 100% then start on the 40-year sentence," which he alleges is illegal. He argues that he never agreed to "do one sentence and then start another." Harmon argues that his counsel, by refusing to rectify any problems within the judgment and sentencing order, "completely abandoned his client's right to effective assistance of counseling[.]"

Harmon argues that his counsel violated the Arkansas Rules of Professional Conduct 1.3(a) and (b) by not acting diligently and promptly to vindicate him. He claims that his counsel did not act in good faith because he misrepresented facts. He contends that he had agreed to be credited with 1,888 days on the "complete sentence, not half of the sentence complete at 100%, then start a second sentence."

He also contends that his counsel failed to investigate his prior convictions, adjudication, or unadjudicated offenses. He argues that if a prior conviction is legally flawed, counsel must seek to have it set aside. He asserts that his counsel admitted not investigating "priors." Harmon claims that counsel's recommendation of a guilty plea, subject to

5

enhanced penalty under the habitual-offender statute, was given without adequate investigation of Harmon's prior criminal history. Harmon argues that he would not have accepted the plea if he had known the exact length of the sentence he would serve. He contends that his prior convictions were unconstitutional, not proved, and do not support his being sentenced as a habitual offender.

The State contends that the circuit court did not err by finding that counsel did not render ineffective assistance in relation to advising Harmon about his prospective prison sentence. We agree. The Arkansas Supreme Court has held that there is no constitutional requirement for defense counsel to inform the client about parole eligibility and that the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases. *See Paige v. State*, 2013 Ark. 432. Also, the determination of parole eligibility is the province of the Arkansas Department of Correction. *See Morris v. State*, 333 Ark. 466, 970 S.W.2d 210 (1998).

The circuit court found that Harmon failed to demonstrate that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The circuit court relied on Digby's testimony that Harmon, after having been provided with the corrected parole information, elected to maintain his guilty plea. Credibility determinations are entitled to deference. *See White v. State*, 2013 Ark. 171, 426 S.W.3d 911. Additionally, the circuit court relied on Harmon's initialed assertion that he had not been made any promises regarding parole eligibility. Accordingly, Harmon failed to demonstrate that he would not have pled guilty but for counsel's alleged errors.

## V. *DNA*

Harmon argues that trial counsel was ineffective for his failure to investigate and challenge DNA results with an outside expert, to subpoena, or to move to test Nakita Smith's DNA in order to prove a third-party-culpability defense. He also contends that Smith's medical records were withheld within the first trial, which was a *Brady* violation. He argues that counsel's failure to move to suppress Smith's testimony as not credible was unreasonable, and Harmon's contention is that his counsel failed to pursue a viable trial strategy.

Harmon's claim is not cognizable. To prevail on a claim of ineffective assistance of counsel for failure to investigate, the petitioner must allege some direct correlation between counsel's deficient performance and the decision to enter the plea. *See Smith v. State*, 2016 Ark. 401, 503 S.W.3d 783. Harmon does not argue that his counsel's action caused him to plead guilty. Further, Harmon cannot demonstrate deficient performance because his complaint is with counsel's trial strategy. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *See Hickey v. State*, 2013 Ark. 237, 428 S.W.3d 446. Brasuell testified that he requested additional evidence be tested for DNA with the crime lab, and he explained that he did not seek to force Smith to submit to a DNA test because he knew she is a felon and that her DNA was already in the database. Further, Smith had already admitted being in the vehicle when the shooting happened. Accordingly, the circuit court did not err by finding that Brasuell's actions were matters of trial strategy.

## VI. *Identification Testimony*

Harmon argues that his trial counsel was ineffective for his failure to suppress the informant's testimony.  He argues that Bashir's selection of someone other than Harmon in the photo array should have been used in Harmon's defense.  He complains that his counsel was willing to allow Bashir to testify in a third trial.  He argues that counsel's failure to move to suppress this witness's testimony was unreasonable strategy.  Harmon acknowledges that his counsel moved for a mistrial when Bashir chose someone other than Harmon in the photo array.  But he complains that his counsel refused to use Bashir's "misidentification" as grounds to impeach Bashir.

Again, trial strategy falls within the realm of counsel's professional judgment and is not grounds for a finding of ineffectiveness of counsel.  *See Hickey*, *supra*.  Brasuell testified that it was not in his client's best interest to pursue a strategy that Bashir had identified the wrong person in a photograph lineup because it would have provided a backdoor for the State to introduce evidence that Bashir identified Harmon from a prior robbery earlier the same day as the shooting.  It is not ineffective assistance of counsel to avoid eliciting testimony that would provide a backdoor to the admission of other bad acts by the defendant.  *See Rose v. State*, 2017 Ark. App. 355, 526 S.W.3d 11.  Thus, the circuit court's finding was not clearly erroneous.

## VII. *Double Jeopardy*

Harmon argues that the circuit court abused its discretion for not granting relief based on protections provided by the Fifth Amendment—double jeopardy.  Harmon argues that the double-jeopardy clause protects against multiple punishments for the same offense imposed in a single proceeding.  *See Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002).

He contends that two consecutive sentences were imposed on him, when state law permitted only one. He claims that it is impermissible to be sentenced to separate punishments for manslaughter and the underlying felony of robbery, citing Arkansas Code Annotated section 5-1-110 (multiple-offense prosecutions). He also argues that the doctrine of merger prevents his being punished separately for manslaughter and robbery because the underlying robbery served as the predicate crime for manslaughter, and the crimes merged into one. Harmon also argues that his motion to be appointed counsel in his Rule 37 proceeding was denied, and he claims it should have been granted.

Harmon pled guilty to both manslaughter and robbery. The sentences were ordered to be served consecutively. This does not place him in double jeopardy. *See White v. State*, 2009 Ark. 225. Counsel cannot be ineffective for failing to make meritless motions. *Rea v. State*, 2016 Ark. 368, 501 S.W.3d 357. Further, there is not a constitutional right to postconviction counsel in Arkansas. *Gipson v. State*, 343 Ark. 44, 31 S.W.3d 834 (2000). We hold that the circuit court committed no error.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Henry Harmon*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.